**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| K.B. A MINOR, by and through his parent, K.B., | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 2:22-cv-02464-JPM-cgc |
| v. | ) ) | |
| MEMPHIS-SHELBY COUNTY SCHOOL DISTRICT, | ) ) ) | |
| Defendant. | ) ) | |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT MEMPHIS-SHELBY COUNTY SCHOOL DISTRICT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Before the Court is Defendant Memphis-Shelby County School District's ("MSCS") Motion for Partial Summary Judgment, filed on February 27, 2023. (ECF No. 17.) Defendant moves the Court to exclude "additional evidence in support of [Plaintiff's] claim that the administrative law [judge]'s compensatory education award is insufficient" to remedy violations of the Individuals with Disabilities in Education ("IDEA"), 20 U.S.C. §1400, et seq. (Id. at PageID 3572.) Defendant also moves the Court to determine "[w]hether Plaintiffs exhausted administrative remedies on their claim that there is a continuing, systematic violation of the IDEA." (Id.)

For the reasons discussed below, Defendant's Motion for Partial Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**.

I.      **BACKGROUND**

    *A. Undisputed Facts*

Plaintiffs "brought the underlying case before a Tennessee Administrative Law Judge [("ALJ")] who adjudicated the case on behalf of the Tennessee Department of Education, Division of Special Education." (ECF No. 17-1 ¶ 1; ECF No. 24-1 ¶ 1.) "In the underlying case, the Plaintiffs alleged that Defendant failed to identify (or "find") K.B. as a student with a disability, failed to properly evaluate him and failed to provide him with a free appropriate public education ("a FAPE") as required by the IDEA for the 2020-2021 School Year." (ECF No. 17-1 ¶ 2; ECF No. 24-1 ¶ 2.) "Plaintiffs alleged that the same violations continued into the 2021-2022 school year." (ECF No. 17-1 ¶ 3; ECF No. 24-1 ¶ 3.)

The ALJ issued a Final Order on May 17, 2022, "and found in favor of Plaintiffs on two claims and [found] that Plaintiffs were entitled to compensatory education for those claims." (ECF No. 17-1 ¶ 4; ECF No. 24-1 ¶ 4.) "The ALJ found in favor of Defendant on all remaining claims." (ECF No. 17-1 ¶ 5; ECF No. 24-1 ¶ 5.) "The ALJ . . . conducted a three-day due process hearing" on March 22 and 23, 2022, which was then continued and concluded on April 8, 2022. (ECF No. 17-1 ¶ 6; ECF No. 24-1 ¶ 6; see also ECF No. 17-5.) The ALJ determined that Defendant was required to "provide 180 sessions, at 30-minutes, of in-house [Applied Behavioral Analysis] services to K.B," which were to be provided "by a Registered Behavioral Technician, supervised by a [Board Certified Behavioral Analyst] . . . under his current [Individualized Education Plan ("IEP")]." (ECF No. 17-5 at PageID 3707; ECF No. 17-1 ¶ 6; ECF No. 24-1 ¶ 6.)

B. *Procedural Background*

Plaintiffs appealed the ALJ's findings in part and filed the Complaint in the instant case on July 18, 2022.  (ECF No. 1.)  Defendant filed an Answer on September 19, 2022.  (ECF No. 9.) Defendant filed the Administrative Record on December 21, 2022.  (ECF No. 14.)

As stated above, Defendant filed the instant Motion on February 27, 2023.  (ECF No. 17.) Defendant's Motion was accompanied by a Statement of Undisputed Material Facts (ECF No. 17-1), three excerpts from the transcript of the hearing before the ALJ (ECF Nos. 17-2–4), and the Final Order that was issued by the ALJ on May 17, 2022 (ECF No. 17-5).  Plaintiffs filed a Response on April 21, 2023.  (ECF No. 24.)  Plaintiffs' Response was accompanied by a Response to Defendant's Statement of Undisputed Material Facts (ECF No. 24-1) and the Declaration of Eboni Guy ("Ms. Guy"), filed with two exhibits that Ms. Guy represents are files that an employee of Defendant gave to her attorney on May 11, 2022 (ECF No. 24-2).  Defendant filed a Reply on May 5, 2023.  (ECF No. 25.)  Defendant's Reply was accompanied by an exhibit entitled "TDOE Dispute Resolution" (ECF No. 25-2) and a draft IEP that is dated April 26, 2022 (ECF No. 25-3).

On June 14, 2023, the instant case was transferred to United States District Judge Jon P. McCalla for all further proceedings.  (ECF No. 26.)

## II.   LEGAL STANDARD

A party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A fact is 'material' for purposes of summary judgment if proof of that fact would establish or refute an essential element of the cause of action or defense."  Bruederle v. Louisville Metro Gov't, 687 F.3d 771, 776 (6th Cir. 2012).

"In considering a motion for summary judgment, [the] court construes all reasonable inferences in favor of the non-moving party." Robertson v. Lucas, 753 F.3d 606, 614 (6th Cir. 2014) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). "The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact." Mosholder v. Barnhardt, 679 F.3d 443, 448 (6th Cir. 2012) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "Once the moving party satisfies its initial burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue of material fact." Mosholder, 679 F.3d at 448–49; see also Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 587. "When the non-moving party fails to make a sufficient showing of an essential element of his case on which he bears the burden of proof, the moving parties are entitled to judgment as a matter of law and summary judgment is proper." Martinez v. Cracker Barrel Old Country Store, Inc., 703 F.3d 911, 914 (6th Cir. 2013) (quoting Chapman v. UAW Local 1005, 670 F.3d 677, 680 (6th Cir. 2012) (en banc)) (internal quotation marks omitted).

In order to "show that a fact is, or is not, genuinely disputed," a party must do so by "citing to particular parts of materials in the record," "showing that the materials cited do not establish the absence or presence of a genuine dispute," or showing "that an adverse party cannot produce admissible evidence to support the fact." L.R. 56.1(b)(3); Bruederle, 687 F.3d at 776 (alterations in original) (quoting Fed. R. Civ. P. 56(c)(1)); see also Mosholder, 679 F.3d at 448 ("To support its motion, the moving party may show 'that there is an absence of evidence to support the nonmoving party's case.'" (quoting Celotex, 477 U.S. at 325)). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge[.]" Martinez, 703 F.3d at 914 (alteration in original) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)). "The court need consider only the

cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). "[T]he district court has no 'duty to search the entire record to establish that it is bereft of a genuine issue of material fact.'" Pharos Capital Partners, L.P. v. Deloitte & Touche, 535 F. App'x 522, 523 (6th Cir. 2013) (per curiam) (quoting Tucker v. Tennessee, 539 F.3d 526, 531 (6th Cir. 2008), abrogation recognized by Anderson v. City of Blue Ash, 798 F.3d 338 (6th Cir. 2015)).

The decisive "question is whether 'the evidence presents a sufficient disagreement to require submission to a [fact finder] or whether it is so one-sided that one party must prevail as a matter of law.'" Johnson v. Memphis Light Gas & Water Div., 777 F.3d 838, 843 (6th Cir. 2015) (quoting Liberty Lobby, 477 U.S. at 251–52). A party opposing a summary judgment motion "'may not rest upon the mere allegations or denials of [their] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.'" Zakora v. Chrisman, 44 F.4th 452, 464 (6th Cir. 2022) (alteration in the original) (quoting Liberty Lobby, 477 U.S. at 248). "[A] mere 'scintilla' of evidence in support of the non-moving party's position is insufficient to defeat summary judgment; rather, the non-moving party must present evidence upon which a reasonable jury could find in her favor." Tingle v. Arbors at Hilliard, 692 F.3d 523, 529 (6th Cir. 2012) (quoting Liberty Lobby, 477 U.S. at 251). "[I]n order to withstand a motion for summary judgment, the party opposing the motion must present 'affirmative evidence' to support his/her position." Mitchell v. Toledo Hosp., 964 F.2d 577, 584 (6th Cir. 1992) (citing Liberty Lobby, 477 U.S. at 247–254; Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989)). "Conclusory assertions, supported only by Plaintiff's own opinions, cannot withstand a motion for summary judgment." Arendale v. City of Memphis, 519 F.3d 587, 605 (6th Cir. 2008) (citations omitted). Statements contained in an affidavit that are "nothing more than rumors, conclusory allegations and subjective beliefs" are insufficient. Mitchell, 964 F.2d at 584–85.

III.   **ANALYSIS**

   a. *Exclusion of Additional Evidence*

Defendant has not filed a proper motion regarding the exclusion of additional evidence. Summary judgment is only appropriate where a movant shows that it is entitled to *judgment* as a matter of law.  Fed. R. Civ. P. 56(a).  A movant must also identify "each *claim or defense* — or the part of each *claim or defense* — on which summary judgment is sought."  Id. (emphasis added). Whether or not the Court allows Plaintiffs to file additional evidence in district court will not result in a final judgment on the merits regarding any legal claim in the instant case.  The Court therefore interprets Defendant's Motion as a motion seeking to exclude evidence.

Defendant sought to exclude the additional evidence in the instant Motion prematurely, before Plaintiffs moved to admit any additional evidence at all.  Plaintiffs have since moved to admit additional evidence.  (ECF No. 36.)  Defendant has filed a response in opposition.  (ECF No. 43.)  The Court will consider Plaintiffs' motion and Defendant's response in a separate order, considering only that motion and the responsive pleading, to consider those arguments fairly and more fully.  The Court therefore **DENIES** the instant Motion insofar as it is a motion to exclude evidence and reserves full consideration of Plaintiffs' request to file additional evidence for a later order.

   b. *Continuing Violation under the IDEA*

Defendant moves for summary judgment regarding "[w]hether Plaintiffs exhausted administrative remedies on their claim that there is a continuing, systematic violation of the IDEA[.]"  (ECF No. 17 at PageID 3573.)  Plaintiffs plead that Defendant is committing a continuing violation of the IDEA in their Complaint.  (ECF No. 1 at PageID 25–26 (Section V of Plaintiff's Complaint is entitled "Continuing Violations").)  Defendant therefore puts forward an

appropriate summary judgment motion on this issue, as it seeks a final ruling on a portion of Plaintiffs' claim.  Fed. R. Civ. P. 56(a).

### i. Whether Administrative Remedies have been exhausted

Defendant argues that Plaintiffs are required to exhaust their administrative remedies before pursuing any claims they may have against Defendant that occurred after May 17, 2022, the date on which the ALJ issued a Final Order.  (ECF No. 17 at PageID 3587; see also ECF No. 17-5 at PageID 3700.)[1]  There is no indication in the record that Plaintiffs have made any attempt to exhaust their administrative remedies after the ALJ issued their Final Order.  Plaintiffs instead argue that they should be excused from the requirement that they exhaust their administrative remedies.  (ECF No. 24 at PageID 3780–83.)  Plaintiffs essentially make three arguments that are intertwined in their briefing.  Plaintiffs argue that Defendant is committing a continuing violation and make policy arguments that they should be exempted from the exhaustion requirement, describing the requirement as "illogical."  (Id. at PageID 378—82.)  Plaintiffs additionally contend that grieving again would be futile or inadequate.  (Id.)  Finally, Plaintiffs argue that Defendants agreed to litigate the issue of a continuing violation, and apparently that Defendant should be estopped from arguing that Plaintiffs have failed to exhaust their administrative remedies.  (Id. at PageID 3780.)

"The IDEA requires that a plaintiff exhaust the Act's administrative procedures when the lawsuit seeks relief for the denial of a free appropriate public education."  F.C. v. Tennessee Dep't

---

[1] The Court rules as to events that occurred after May 17, 2022, because this is the date that Defendant sets out in the instant Motion.  The ALJ considered whether K.B. was provided with a FAPE through at least the dates of the hearing before the ALJ.  (See ECF No. 17-5 at PageID 3752 ("Determining whether the March 14, 2022, draft IEP is violative of the IDEA is particularly problematic because that IEP is now less than two months old, and there is little to no data available to show whether K.B. is being deprived of an educational benefit due to the allegations made by the Petitioners.").)  The hearing before the ALJ was concluded on April 8, 2022, close to the date of the Final Order.  (ECF No. 17-1 ¶ 6; ECF No. 24-1 ¶ 6; see also ECF No. 17-5.)  The Court therefore considers May 17, 2022, a reasonable date going forward from which Plaintiffs must exhaust their administrative remedies again.

of Educ., 745 F. App'x 605, 608 (6th Cir. 2018); see also Fry v. Napoleon Cmty. Sch., 580 U.S. 154, 159 (2017) (describing the procedure for exhaustion of administrative remedies under the IDEA as laid out in 20 U.S.C. § 1415).  For that reason, it is appropriate for the Court to enter summary judgment regarding any violations of the IDEA that occurred after May 17, 2022, so long as Plaintiffs were required as a matter of law to exhaust his administrative remedies before bringing those violations before this Court.  See B.H. v. Portage Pub. Sch. Bd. of Educ., No. 1:08-CV-293, 2009 WL 277051, at *4 (W.D. Mich. Feb. 2, 2009) (describing failure to exhaust as an issue that should be raised on summary judgment).

   *ii. Continuing Violation*

   Plaintiffs have not directed the Court's attention to any case that has applied the concept of a continuing violation in the context of the exhaustion of remedies requirement under the IDEA, apparently because Plaintiffs cannot locate caselaw on the subject.  (ECF No. 24 at PageID 3782 ("This is not a factual scenario often before the courts")).  The Court therefore evaluates the caselaw on the continuing violation doctrine generally and declines to apply it in the context of the IDEA and the instant case.

   The continuing violation doctrine is clearly applied in the Sixth Circuit in cases arising under Title VII, as well as 18 U.S.C. § 1981 and § 1983.  See, e.g., E.E.O.C. v. Kaplan Higher Educ. Corp., 790 F. Supp. 2d 619, 624 (N.D. Ohio 2011) (applying the continuing violation doctrine in the context of a Title VII case); Kinley v. Norfolk S. Ry. Co., 230 F. Supp. 2d 770, 776 (E.D. Ky. 2002) (18 U.S.C. § 1981 claim); Robinson v. Purkey, 326 F.R.D. 105, 145 (M.D. Tenn. 2018) (18 U.S.C. § 1983 claim).  Under the continuing violation doctrine, a court may toll limitations periods for allegedly wrongful conduct that is continuing in nature.  Robinson, 326 F.R.D. at 145 (citing Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114 (2002)); see also

Heard v. Sheahan, 253 F.3d 316, 31 (7th Cir. 2001) (detailing a debate regarding whether the continuing violation doctrine is a tolling doctrine or is in fact a doctrine governing accrual)). "This Circuit employs the continuing violations doctrine most commonly in Title VII cases." Sharpe v. Cureton, 319 F.3d 259 (6th Cir. 2003) (refusing to find a continuing violation in the context of an action under 18 U.S.C. § 1983 but stating that it may in "rare" instances); see also Ruhl v. Ohio Dep't of Health, No. 1:16-CV-773, 2017 WL 1355697, at *7 (N.D. Ohio Apr. 13, 2017), aff'd sub nom. Ruhl v. Ohio Health Dep't of Health, 725 F. App'x 324 (6th Cir. 2018) (refusing "to interpret IDEA's statute of limitations by combining timely and expired claims into a single violation"); Claybrooks v. Primus Auto. Fin. Servs., Inc., 363 F. Supp. 2d 969, 981 (M.D. Tenn. 2005) ("The Sixth Circuit has not addressed the applicability of the continuing violations doctrine to claims under the [Equal Credit Opportunity Act], although it has observed that courts have been reluctant to apply the continuing violation doctrine outside of the context of Title VII") (citing LRL Props. v. Portage Metro Housing Auth., 55 F.3d 1097, 1105 n. 3 (6th Cir.1995)); Bannister v. Knox Cnty. Bd. of Educ., 49 F.4th 1000, 1015 (6th Cir. 2022) ("We have yet to extend this continuing-violation doctrine to Title IX"); contra Hensley v. City of Columbus, 557 F.3d 693, 697 (6th Cir. 2009) ("This doctrine is rooted in general principles of common law and is independent of any specific action") (citing Heard, 253 F.3d at 318).

On the one hand, there is support for the idea that a continuing violation can render an earlier grievance sufficient to exhaust a petitioner's remedies. The Court can draw an analogy to the context of the Prison Litigation Reform Act, in which, where there is one continuing harm, filing repeated grievances is unnecessary. Morgan v. Trierweiler, 67 F.4th 362, 369–70 (6th Cir. 2023). In Morgan v. Trierweiler, an incarcerated man was denied Halal food in violation of his First Amendment rights. Id. at 370. He filed a grievance regarding this violation of his rights. Id.

at 369.  He alleged that the prison continued to refuse to serve him Halal food after he filed his

grievance.  Id.  He argued that he should not have to file additional grievances in order to exhaust

his administrative remedies for the continued failure to serve him Halal food after he filed his

original grievance.  Id.  The Morgan court held that there was no need for the man to "[raise] the

issue after every meal—or even every two to seven days [as this] would be an unwarranted

expectation given that the allegations were broader than a single meal."  Id. at 370–71.

The exhaustion of remedies in IDEA cases plays an important role in their effective

resolution, however, enabling "the agency to develop a factual record," "apply its expertise," and

"correct its own mistakes," which in turn "promotes accuracy, efficiency, agency autonomy, and

judicial economy."  Donoho ex rel. Kemp v. Smith City Bd. of Educ., 21 Fed. App'x 293, 296 (6th

Cir. 2001) (quoting Christopher W. v. Portsmouth Sch. Comm., 877 F.2d 1089, 1094 (1st Cir.

1989)).  District courts are "not the entities best equipped to craft an IEP or remedial substitutes.

They are, instead, suited to reviewing detailed administrative records, such as those that would be

furnished through due process hearings . . . under the IDEA."  Long v. Dawson Springs Indep.

Sch. Dist., 197 F. App'x 427, 433–34 (6th Cir. 2006).  As the ALJ noted, even on the administrative

level, the filing of new IEPs and the ever-changing needs of a child enrolled in school presents

challenges "in deciding the outcome of a legal proceeding in situations that continue to evolve

after the filing of the initiating document."  (ECF No. 17-5 at PageID 3752.)  Those are challenges

that an ALJ is better equipped to handle than a district court judge.

Both sides make logical arguments in the instant case, which is apparently a novel factual

backdrop for the application of the requirement that grievances be exhausted under the IDEA.

Plaintiffs are correct that it is burdensome to repeatedly grieve the alleged continuing failure to

provide K.B. with a FAPE.  It makes sense to the Court that a petitioner should not be required to

grieve "after every meal," or after every school day that the Plaintiffs allege that K.B. does not receive a FAPE under a continuing factual pattern. Morgan, 67 F.4th at 370. It is far from clear, however, that the extension of that doctrine into the arena of the IDEA is appropriate. See LRL Props., 55 F.3d at 1105 n. 3. What *is* clear to the Court is that there are strong policy arguments in favor of the exhaustion requirement. See Donoho, 21 Fed. App'x at 296; see also B.H., 2009 WL 277051, at *9 ("Here, plaintiffs' claims revolve around the deprivation of a FAPE [and] defendants' alleged failure to comply with their child find obligations . . . . These are precisely the types of fact-intensive inquiries that the administrative process was designed to address."). For that reason, the Court will require Plaintiffs to exhaust their administrative remedies for alleged failures to provide K.B. with a FAPE that occurred after the ALJ's issued the Final Order on May 17, 2022.

### iii. Futile or Inadequate

Plaintiffs argue that "exhaustion would be futile or inadequate" in the instant case. (ECF No. 24 at PageID 3780–83; see also Honig v. Doe, 484 U.S. 305, 327.) Plaintiffs allege that Defendant is continuing to fail to provide K.B. with a FAPE, and as a result grieving again before an ALJ would be futile. (Id. at PageID 3781.) Plaintiffs further argue that K.B. is encountering a "systemic failure" that ought to exempt him from the requirement that he exhaust his administrative remedies. Id. The "'burden of demonstrating an exception from the exhaustion requirement falls on the party seeking to avoid the requirement.'" Donoho, 21 F. App'x at 297 (citing Rose v. Yeaw, 214 F.3d 206, 211 (1st Cir. 2000)). Plaintiffs have not carried their burden.

It would not be futile for Plaintiffs to grieve alleged further failures to provide K.B. with a FAPE through the administrative process, even though Plaintiffs argue that "the issue of whether Defendant is continuing to provide K.B. a FAPE is still [live] despite the instant litigation." (ECF

No. 24 at PageID 3781.)  As the Court has discussed above, there are strong policy arguments in favor of requiring Plaintiffs to exhaust their administrative remedies.  Infra, III.b.ii.  The mere fact that an issue is live is not a compelling reason to cast those arguments aside.  See, e.g., R.Z. by B.Z. v. Cincinnati Pub. Sch., No. 1:21-CV-140, 2021 WL 3510312, at *5 (S.D. Ohio Aug. 10, 2021), report and recommendation adopted, No. 1:21-CV-140, 2023 WL 1097977 (S.D. Ohio Jan. 30, 2023) (rejecting a plaintiff's argument that exhaustion of his administrative remedies under the IDEA would be futile because an administrative procedure would be unlikely to result in a student's IEP or Section 504 Plan being corrected or properly addressed, where a student was actively attending high school in the district that was the subject of the suit); see also Parker v. W. Carroll Sch. Dist., No. 20-CV-1044-STA-TMP, 2021 WL 2910207, at *5 (W.D. Tenn. May 27, 2021), report and recommendation adopted, No. 1:20-CV-1044-STA-TMP, 2021 WL 2590162 (W.D. Tenn. June 24, 2021), aff'd sub nom. Parker v. W. Carroll Special Sch. Dist., No. 21-5700, 2022 WL 2913982 (6th Cir. Mar. 14, 2022) (rejecting a plaintiff's argument that exhausting remedies under the IDEA would be futile in the case of a student who was actively attending school in the district that was the subject of the suit).

Plaintiffs are also not encountering a systemic failure that renders grieving futile.  A systemic failure renders exhaustion futile or inadequate when a plaintiff goes further than challenging an IEP or other comparable "school-level deprivations."  J.M. by & Through Mata v. Tennessee Dep't of Educ., 358 F. Supp. 3d 736, 752 (M.D. Tenn. 2018) (alleging systemically inadequate state-level oversight); see also L.L. By & Through B.L. v. Tennessee Dep't of Educ., No. 3:18-CV-00754, 2019 WL 653079, at *6 (M.D. Tenn. Feb. 15, 2019) (describing systemic problems as those "that would need to be resolved by policymakers, not merely through the administrative complaint process"); J.S. ex rel. N.S. v. Attica Cent. Sch., 386 F.3d 107, 114-15 (2d

12

Cir. 2004) (finding that allegations of a district-wide failure to prepare and implement IEPs and train staff amounted to allegations of systemic failure).

Plaintiffs' Complaint alleges that K.B. did not receive a FAPE. This is fundamentally a claim related to a failure to provide and implement an appropriate IEP, and does not detail systemic failures that could only be resolved by policy-making, nor does it detail any particular system-wide failure. (See ECF No. 1 ¶¶ 70–73.) The ALJ's final order is a highly individualized ruling that details several ways in which Defendant failed to provide K.B. with a FAPE and committed a child-find violation in failing to properly identify K.B. as a student with a disability and evaluate his needs in his educational environment. (ECF No. 17-5.) "Plaintiffs have not met their burden of showing why it would be futile to pursue their IDEA claims through the administrative processes set out in that statute." Gean, 330 F.3d at 774.

iv.   The Joint Stipulations

Finally, Plaintiffs make an argument that Defendant stipulated that an issue in the instant case was whether Defendant had provided K.B. with a FAPE "during K.B.'s 2021-2022 school year to date[.]" (ECF No. 24 at PageID 3780.) Plaintiffs contend that "Defendant agreed that an issue for hearing was whether or not it was continuing to provide K.B. a FAPE." (Id.) They also argue that "Plaintiffs clearly plead and litigated Defendant's failure to provide a FAPE as an ongoing failure," and that therefore Defendant cannot now argue that the issue was not exhausted. (Id.) This seems to be an estoppel argument, although it cites no law and is not framed as such.

Defendant did not stipulate to litigating its failure to provide K.B. with a FAPE as an ongoing or continual failure. The document that Plaintiffs cite for their proposition is a statement of issues for determination by the ALJ. (ECF No. 14-2 at PageID 522–23.) The Parties agreed that the ALJ needed to "make factual determinations" related to the issue of Defendant's failure to

provide K.B. with a FAPE within the stated timeframe. (<u>Id.</u> at PageID 522.) The Court does not understand this document to be an agreement that Defendant will argue on the merits that it is providing K.B. with a FAPE for all time but understands it to be a statement that limited the issues before the ALJ for the sake of efficient management of the case.

Additionally, Defendant stated that one of the issues before the ALJ was whether it had provided K.B. with a FAPE "to date," that is, the date on which the document Plaintiffs cite was filed with the ALJ. (<u>Id.</u> at PageID 523.) That date was January 21, 2022. (ECF No. 14-2 at PageID 523.) The plain meaning of this document is that Defendant agreed the ALJ was to make a factual finding regarding the extent of its provision of K.B. with a FAPE until January 21, 2022. That proposition is bolstered by the inclusion of the "2021-2022 school year" language, which would also limit the timeframe of the statement to that ongoing school year. (<u>Id.</u> at PageID 522.) Even taking this document as an agreement to litigate the issue of Defendant's alleged ongoing failure to provide K.B. with a FAPE, the Court understands the agreement to be stipulating only to the stated timeframe of the 2021-22 school year up until January 21, 2022.

Finally, even taking the statement of issues as a document binding Defendant to argue that it is continuing to provide K.B. with a FAPE, it does not follow that Defendant is precluded from arguing that Plaintiffs have failed to exhaust their administrative remedies before this Court.

Plaintiffs' argument that Defendant is now estopped from arguing that they have failed to exhaust their administrative remedies is without merit.

### v. Summary

Defendant's Motion for Summary Judgment on the issue of an alleged "continuing violation" is **GRANTED**. Plaintiffs must exhaust their administrative remedies.

IV.     **CONCLUSION**

For the reasons discussed below, Defendant's Motion for Partial Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**.  Plaintiffs must exhaust their administrative remedies as to allegations of a continuing violation, and the Court reserves its findings on the issue of the admission of additional evidence for a later order.

**IT IS SO ORDERED**, this 5th day of September, 2023.

 /s/ Jon P. McCalla
JON P. McCALLA
UNITED STATES DISTRICT JUDGE