**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

---

**K.B., by and through his Parent,**
**K.B.,**

Plaintiffs**.**

No.: 2-22-cv-02464-JPM-cgc

**v.**

**MEMPHIS-SHELBY COUNTY SCHOOLS,**

Defendant.

---

**PLAINTIFFS' POST-HEARING BRIEF**

---

Plaintiffs, through undersigned counsel, respectfully submit this Post-Hearing Brief following the evidentiary hearing held in this case on December 18-19, 2023, and January 8, 2024. Plaintiffs reiterate their position that defendant Memphis-Shelby County Schools (Defendant and/or MSCS) denied K.B. the free appropriate public education (FAPE) that it was required to provide him in accordance with the Individuals with Disabilities Education Act, 20 U.S.C. § 1400, *et seq*, at all times relevant and that the state Administrative Law Judge (ALJ) who presided over the underlying due process case erred both in failing to find Plaintiffs the prevailing party on all their claims and in failing to award appropriate compensatory education.

Throughout this case, including at the recent evidentiary hearing before this Court, Defendant's odd tactic is a reliance on its failure to act as a defense. For example, Defendant collected no meaningful data on K.B.'s skill acquisition until May-June 2022, but then argues that Plaintiffs have not met their burden to demonstrate the skills K.B. should have mastered during that time period. The supplemental evidentiary hearing made clear that despite a pending due

process case, Defendant did not even attempt to fulfill its IDEA-mandated obligations to provide a FAPE to K.B. until after the due process hearing concluded largely in Plaintiffs' favor. Those attempts were simply too little, too late. Plaintiffs rely on the entirety of the hearing as contained in the transcripts, as well as all the other briefing already submitted, and submit this brief as a summary of the most salient points from the hearing as follows:

## I. DEFENDANT DID NOT PROVIDE A FAPE TO K.B. AT ANY POINT DURING THE 2021-2022 SCHOOL YEAR.

### a. K.B. needed ABA services in the 2021-2022 school year to receive a FAPE.

The evidence in the administrative record and solicited during the supplemental evidentiary hearing demonstrates K.B.'s need for Applied Behavior Analysis (ABA) services at school in order to access his education and to receive a FAPE. First, Dr. Sarah Irby's Independent Education Evaluation (IEE) from late December 2021 and early January 2022, ECF 14-16, PgID 3521, recommended that K.B. receive ABA services at school under the supervision of a Board Certified Behavior Analyst (BCBA) because it would "help him develop his communication skills like requesting what he needs and the social reciprocal play with peers and helping him access better the educational system that he's in." ECF 14-7, PgID 1439.

Second, K.B.'s Individualized Education Program (IEP) team agreed on February 28, 2022, that he needed the support of a Registered Behavior Technician (RBT) who, by definition, works under the supervision of a BCBA to provide "social behavior" services by an RBT. ECF 14-14, PgID 3020-1, 3023.

Next, the testimony at the supplemental evidentiary hearing confirmed K.B.'s need for ABA and a 1:1 RBT through the testimony of Dr. Irby (see, e.g., ECF 90, PgID 4936, 4843-44, 4955), Geoffrey Ferris (see, e.g, ECF 90, PgID 5019, 5022-23), and Jennifer Wyatt (ECF 97, PgID 5201).

Finally, once Defendant finally started collecting data in May 2022 (***almost two years after K.B. moved into the school district***), that data demonstrates that K.B. made progress in both behaviors and skill acquisition, including academics, after Defendant started ABA services for him. ECF 90, PgID 5035-36; ECF 97, PgID 5192, 5197-98, 5201. Defendant's BCBA, Jennifer Wyatt, testified that while she couldn't make an educated decision about whether he was making progress during the 2021-2022 school year because she didn't have any data prior to 2021[1], K.B. did make progress after she started providing ABA services to him as BCBA. ECF 97, PgID 5201.

b. **Defendant did not provide ABA services to K.B. until after May 2022.**

One of the most significant pieces of evidence in the supplemental evidentiary hearing was the revelation that Defendant did not provide K.B. with ABA services until after May 2022. Although K.B.'s IEP team agreed on February 28, 2022 that he needed an RBT and "social emotional" services (which is Defendant's term for ABA), it now appears that Defendant did not actually provide these services until ***after*** the due process hearing and ***after*** the ALJ's meagre ABA compensatory education award per his order on May 17, 2022.[2] Jennifer Wyatt testified that she started working as K.B.'s BCBA and RBT (because Defendant did not employ any other BCBA's or RBT's at the time K.B.'s team agreed that he needed an RBT) in May 2022. ECF 97, PgID 5154-55. She also testified that her worked began with evaluation which included classroom observations and the first administration of the ABLLS-R[3]. ECF 97, PgID 5155. Her ABLLS-R

[1] Defendant failed to collect any data during the 2020-2021 school year. ECF 14-16, PgID 3511.

[2] In addition to Ms. Wyatt's testimony, Defendant's question formulation at hearing also appears to reveal that ABA was only provided to K.B. as a result of the ALJ's compensatory education award: "Okay. What, if anything, does this tell you about K.B.'s progress in math as it relates to his compensatory services?" ECF 97, PgID 5197.

[3] Ms. Wyatt was unable to recall that ABLLS-R is the Assessment of Basic Language and Learning Skills - Revised (The ABLLS-R®) (see, https://partingtonbehavioranalysts.com/products/ablls-r-the-assessment-of-basic-language-and-learning-skills-revised) and instead erroneously identified it as the "Assessment of the behavior of language learners." ECF 97, PgID 5156 (compare, Dr.

testing lasted through to June 2022. ECF 97, PgID 5165. Thus, K.B. did not receive any ABA until after the time period that this Court has determined as relevant and, therefore, did not receive a FAPE.

Defendant appeared to imply at hearing that the operative IEP for the entirety of the 2021-2022 school year was from October 21, 2021, as a result of lack of parental participation. If Defendant makes this spurious argument, several points bear noting. K.B.'s parents[4] have attended every single IEP meeting, ECF 90, PgID 4793; ECF 97, PgID 5259, and those meetings have been so numerous that even Defendant's own staff has a hard time remembering and distinguishing between them. See, e.g., ECF 97, PgID 5218-19. Defendant has not put forth any evidence to explain why the last signed IEP in the record is dated October 18, 2021, but Plaintiffs have: because no IEP during the relevant time period has reflected the agreements of the IEP team. Additionally, Plaintiffs maintain since the filing of the underling due process complaint in October 2021 that K.B. requires more (and different) services than the team has ever agreed to and that Defendant has offered. This does not absolve Defendant of its IDEA-mandated duty to provide K.B. with a FAPE. In Tennessee, IEPs go into effect fourteen days after completion even if no agreement is reached. Tenn. Comp. R. & Regs. 0520-01-09-.12.[5]

As such, Defendant should have provided an RBT for K.B. and ABA services by March

---

Irby's correct definition without being asked, ECF 90, PgID 4949). While rote memory of testing protocol names is not indicative of witness reliability standing alone, when taken in combination with other errors and inconsistencies (as well as Ms. Wyatt's vested interest as a long-standing employee of Defendant), Ms. Wyatt's opinion is not as objectively reliable as Dr. Irby's.

[4] By "parents," Plaintiffs are referring to K.B.'s father, Mr. Bardwell, as well as Mr. Bardwell's girlfriend, Eboni Guy, with whom he and his children live (even though Ms. Guy is not legally K.B.'s parent).

[5] Defendant's counsel made a passing reference to "stay put" during the evidentiary hearing. This is not an issue in this case. Instead, this case involves the opposite scenario in which Plaintiffs are arguing that the services and setting proposed by Defendant is not enough to provide a FAPE.

14, 2022, at the latest (fourteen days after the team agreed he needed those services).[6] See, February 28, 2022 IEP Meeting Minutes, ECF 14-12, Hr'g Ex. 26. But despite the pending due process complaint, Defendant did not provide a draft immediately following the IEP meeting. This Court has before it the draft dated March 14, 2022, as Exhibit 21. As has been argued extensively in previous briefing, this draft did not contain all the agreements of the team. See, e.g., ECF 40-1, Plaintiffs' Memorandum in Support of Motion for Judgment on the Administrative Record, at 10-11.

c. **Defendant did not have the necessary personnel in place to provide K.B. a FAPE.**

Defendant did not have the ability to fulfill that agreement on February 28, 2022, when the IEP team agreed that K.B. needed an RBT, nor at any time thereafter during the 2021-2022 school year. Defendant's witnesses were and are unreliable on this issue (and others).

Jennifer Wyatt testified that she is the only BCBA employed by Defendant and – to her knowledge – is the only BCBA employed by Defendant since 2014. ECF 97, PgID 5210. While her testimony during the state due process hearing was unclear, Ms. Wyatt made clear at the supplemental evidentiary hearing that Defendant definitely did not have an RBT available for K.B. at any point during the 2021-2022 school year. Compare ECF 14-7, PgID 2414-15 with ECF 97, PgID 5213. Instead, Ms. Wyatt erred when she testified that K.B.'s RBT qualified in October 2022 (which is still after the time period relevant to this Court). ECF 97, PgID 5213. In fact, his RBT

[6] Plaintiffs do not waive their argument that ABA delivered by an RBT under BCBA supervision should have been provided starting as soon after the beginning of the 2020-2021 school year as practicable (given the need to evaluate K.B. as a new student in the district). Nor do Plaintiffs waive the argument that the IEP team should have and could have met sooner after the completion of Dr. Irby's IEE. Nonetheless, at the very least, Plaintiffs believed that that the agreements of the IEP team on February 28, 2022 had been implemented despite the significant delay in the provision of a written IEP.

only completed his credentialing during the 2023-2024 school year. ECF 97, PgID 5259. Ms. Wyatt also made the incredulous claim that she served as K.B.'s full-time RBT and did not fulfill any of her other job duties:

> So during that time before -- before I had somebody certified as an RBT, I was there every day serving that role. All those responsibilities fell on me. He was more of following what I was doing. I was training him on the job, so I was the one giving the direct instruction of what to do, what was next. All my other responsibilities of my job were given to other people. There was nobody else that needed -- that needed the license of BCBA at that time, so I was able to give out my entire concentration just to K.B. the entire time and help with the RBT. I didn't leave the RBT at any time, other than to maybe run to the bathroom, like he would do, to take a break.

ECF 97, PgID 5236. However, Ms. Wyatt also testified that her job duties are "so many to name." ECF 97, PgID 5212-13. Given that Defendant is the largest school district in the state and one of the largest school districts in the nation and given the prevalence of autism (not to mention other disabilities that benefit from ABA and the services of a BCBA) and the recognition that ABA is the gold standard for addressing autism, the notion that nobody else in the entire school district needed the services of a BCBA for any time period – especially not a time period exceeding an entire school year – is either preposterous, tragic, or both.[7] Plaintiffs will never know whether K.B. actually received Ms. Wyatt's services as required by his IEP, albeit after May 2022. or whether other children needing ABA services suffered during the 2022-2023 school year. But K.B. definitely did not receive the services of an RBT under a BCBA's supervision until after May 2022.

---

[7] *See* http://www.scsk12.org/about/. According to MSCS's website, MSCS serves over 106,000 students with almost 14,000 employees. (*Id*.). According to the Centers for Disease Control (CDC), one in 44 children has been identified with autism spectrum disorder. *See* https://www.cdc.gov/ncbddd/autism/ data.html. ABA is the gold standard for treatment of autism and is also used to help many different kinds of learners. *See, e.g.*, https://www.autismspeaks.org/applied-behavior-analysis.

Rebeca Fik's testimony was wholly unreliable. Despite forty-nine years of special education experience working for the Defendant, Ms. Fik provided contradictory testimony about ABA and K.B.'s need for it. Ms. Fik testified to her belief in the sufficiency of the October 18, 2021 IEP. In particular, she opined that K.B. did not need a functional behavior assessment (FBA) to develop a behavior intervention plan (BIP) despite the numerous observations and data points from her own employees that he was exhibiting behaviors that impeded not only his own learning but that of other students (see more detailed discussion below; see also ECF 90, PgID 5007, 5010-11, 5014). Ms. Fik said that those behaviors could be addressed by his October 18, 2021 IEP goals even though Defendant had not conducted a single assessment of his behavior beyond Mr. Graves' deficient psychoeducational evaluation (that, despite its deficiencies, identified a number of behaviors warranting an FBA) at the time those goals were developed. ECF 97, PgID 5244. The October 18, 2021 IEP also did not include any ABA services.

At the state due process hearing, Ms. Fik testified both that the amount of ABA to provide children was outside the scope of her knowledge and that K.B. should only receive thirty minutes of ABA daily for a school year (with no other related services, namely speech language therapy but also occupational therapy) as compensatory education. ECF 97, PgID 5251; ECF 14-7, PgID 2101, 2326. Ms. Fik then lied under oath when she testified in response to Defendant's counsel's questioning that Defendant already had an RBT on staff. ECF 14-7, PgID 2328-29. This Court should disregard not only Ms. Fik's testimony on January 8, 2024, but also all of her opinion regarding compensatory education in this case.

d. **Defendant failed to conduct an FBA and develop a BIP even though its own observations of him demonstrated a necessity to do so.**

Mr. Ferris's testimony also made clear that Defendant's failure to conduct an FBA and develop a BIP following the October 18, 2021 IEP meeting also constituted a failure to provide

FAPE. Defendant failed to act upon the observations of its own personnel (as well as that of Dr. Irby). Interestingly, Defendant simultaneously argued that it could not collect objective/standardized speech/language assessment data because of K.B.'s inability to maintain attention, but then also argued that he had no problem behaviors warranting an FBA. Compare ECF 90, PgID 5069 and ECF 97, PgID 5113 to ECF 97, PgID 5165. This was another area in which Ms. Wyatt's testimony lacked credibility, especially in light of Exhibit 6, ECF 90, PgID 5049, which charted negative behaviors and his positive reaction to the provision of ABA to correct them. Mr. Ferris and Ms. Wyatt both agreed that once she finally did start collecting ABLLS-R data and behavioral data, the data demonstrated K.B.'s ability to make progress when receiving ABA services from an RBT and/or a BCBA. Thus, any time period K.B. missed these services is a time period that K.B. did not receive a FAPE, and that includes the entirety of the 2020-2021 and 2021-2022 school years.

## II. THE COMPENSATORY EDUCATION AWARDED BY THE ALJ WAS WHOLLY INADEQUATE TO REDDRESS K.B.'S DEFICITS

### a. The compensatory education award provided no speech/language therapy and is therefore facially inadequate.

Both Plaintiffs' speech language pathologist expert, Courtney Bauer, and Defendant's witness, Daphne McDonald, agreed that K.B.'s speech/language deficits were severe and that he needed sixty minutes weekly in the 2021-2022 school year as part of the provision of FAPE. ECF 89, PgID 4882, 4894; ECF 97, PgID 5115. Only Ms. Bauer opined on the amount of speech language therapy needed as compensatory education for the sessions he missed for the entirety of the 2020-2021 school year: an additional 30 minutes weekly for a school year. ECF 89, PgID 4895.[8]

---

[8] Plaintiffs could not have foreseen that the ALJ would fail to award a single minute of speech language therapy for K.B. after hearing that one of K.B.'s main disabilities is a communication

b. **The compensatory education award did not account for Defendant's failure to provide a FAPE to K.B. throughout the 2021-2022 school year.**

Because the ALJ erroneously found that Defendant provided K.B. a FAPE starting with the October 18, 2021 IEP, his award correspondingly failed to account for the deficits K.B. suffered throughout the 2021-2022 school year. His award also failed to account for the cumulative effect two-year's worth of missed and deficient services had on K.B. in light of his disabilities. Dr. Irby testified that skill acquisition compounds: "So as you build a skill in one area, it help you in skills — with skills in other areas. So as you learn to label things in your environment, you're able to request those things, too. So you're going to snowball into more skill development and more rapid skill development as you've been in ABA longer." ECF 90, PgID 4972-73. She also testified that the inverse is true, and that K.B. will likely never make up for the deficits he suffered as a result of Defendant's failure to provide services in the 2020-2021 school year (let alone the lack of FAPE in the 2021-2022 school year). ECF 90, PgID 4952.[9]

This snowball effect is, in part, the rationale for Plaintiffs request that this Court award private placement at public expense as a remedy. The other part of the rationale is that Defendant has continued to fail K.B. and his family despite the involvement of legal counsel, despite pending litigation, and despite losing on most claims at due process. Dr. Irby explained that a placement such as Madonna Learning Center would provide an opportunity to attempt to catch up as much

disability, that he was largely nonverbal and echolalic at the time of the filing of the due process complaint, and after hearing testimony from K.B.'s then-current speech language therapist during the due process hearing. Thus, the failure to award any speech language therapy in his compensatory education award was a failure of the ALJs and not an issue that could otherwise have been exhausted beyond that which Plaintiffs had already done.

[9] Dr. Irby also provided credible testimony demonstrating the rate of skill acquisition K.B. achieved when receiving 37.5 hours per week of ABA in Indiana prior to moving to Memphis and the deficits created by Defendant's failure to provide any special education in the 2020-2021 school year and deficient services in the 2021-2022 school year. Defendant did not provide contrary testimony.

as possible in a setting with a lower teacher:student ratio and individualized instruction than Defendant can provide. ECF 90, PageID 4943-54.

## III. CONCLUSION

The tragedy at the heart of this case was most recently best summed up by Ms. McDonald. She described for this Court a curious, sweet child with a sense of humor. A child who wants to learn. A child who is capable of learning and who likes to demonstrate what he has learned. A child who wants to communicate. ECF 97, PgID 5136. A child who for two school years was robbed of the opportunity to do so during a critical developmental period, a period that may never be fully regained. Defendant – an entity funded by taxpayers with the express mission of educating our community's children – robbed K.B. first by denying him any services and then by failing to correct its mistakes with any sense of urgency. The supplemental evidentiary hearing highlighted again Defendant's failures, particularly those to timely act and to collect, record, and share necessary data in this case:

- Defendant failed to identify K.B. as a child with a disability in need of special education and related services from the time of his enrollment in the district until August 2021, ECF 14-16, PgID 3511;
- Defendant failed to conduct a sufficient psychoeducational evaluation, ECF 14-16, PgID 3518;
- Defendant failed to share the Innovations in Learning records with Dr. Irby when she was conducting K.B.'s IEE, ECF 14-16, PgID 3502;
- Defendant failed to share the Innovations in Learning records with Plaintiffs until the relative eve of trial through discovery, ECF 14-16, PgID 3502;
- Defendant failed to collect any baseline data regarding K.B.'s skill acquisition (e.g.

VB-MAPP or ABLLS-R testing) until after the due process hearing decision in May 2022 (see above);

- Defendant failed to collect standardized testing scores in the area of speech and language, ECF 89, PgID 4883;
- Defendant failed to timely conduct an Assistive Technology Assessment during the 2021-2022 school year, ECF 89, PgID 4885;
- Defendant failed to conduct a full audiological examination at any time despite records indicating potential unilateral hearing loss, ECF 89, PgID 4909-10, 4920;
- Defendant failed to provide copies of IEPs in a timely fashion after IEP meetings (see above);
- Defendant failed to conduct an FBA during the 2021-2022 school year and the requisite behavioral observation data collecting included (see above);
- Defendant failed to implement all of Dr. Irby's recommendations in her IEE (absence of evidence of implementation in the record);
- Defendant failed to implement the agreements of K.B.'s IEP team in the February 28, 2022 IEP meeting during the 2021-2022 school year (see above);
- Defendant failed to have the personnel necessary to implement the agreements of of K.B.'s IEP team in the February 28, 2022 IEP meeting during the 2021-2022 school year (see above);
- Defendant failed to provide fourth quarter IEP progress reports for the 2021-2022 school year and failed to introduce them as evidence (absence in the record);
- Defendant failed to provide reliable special transportation during the 2021-2022 school year (twice sending K.B. on the wrong bus, once before school and once

after school), ECF 14-16, PgID 3515, ECF 14-7, PgID 2083; ECF 14-16, PgID 3525.

Plaintiffs understandably no longer trust that Defendant is capable of ever providing a FAPE to K.B. The harm that K.B. has suffered may be irreparable, and Plaintiffs should be given the opportunity to decide for themselves the educational setting that will provide K.B. an "appropriately ambitious" educational program "in light of his circumstances." *Endrew F. v. Douglas Cty. Sch. Dist. RE-1*, 580 U.S. 386, 402, 137 S. Ct. 988, 1000 (2017).[10]

Respectfully submitted,

s/ *Janet H. Goode*
Janet H. Goode, TN BPR #35872
917 S. Cooper Street
Memphis, Tennessee 38104
(901) 308-7511
(901) 641-3972 (fax)
janet@janetgoodelaw.com

s/ *Michael F. Braun*
MICHAEL F. BRAUN (BPR 032669)
5016 Centennial Boulevard, Ste. 200
Nashville, TN 37209
(615) 378-8942
mfb@braun-law.com

**Attorneys for Plaintiffs**

## CERTIFICATE OF SERVICE

[10] Plaintiffs also seek all the relief requested in their Memorandum in Support of their Motion for Judgement on the Administrative Record.

I certify that on February 22, 2024, I filed a copy of the foregoing Plaintiffs' Post-Hearing Brief by means of the Official Court Electronic Document Filing System (CM/ECF) for the Western District of Tennessee, which simultaneously sent a copy to counsel for the Defendant, Shelby County Schools, Office of General Counsel, 160 S. Hollywood, Room 218, Memphis, Tennessee 38112, Laura Bailey, Associate General Counsel, at baileyla@scsk12.org, and KaShonda L. Day, Adams and Reese, LLP, 1018 Highland Colony Parkway, Ridgeland, MS 39157, kashonda.day@arlaw.com.

Signed: *s/Janet H. Goode*
Janet H. Goode