**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

---

**K.B., by and through his
Parent, K.B.,**

***Plaintiffs*,**

**v.**

**MEMPHIS-SHELBY
COUNTY SCHOOLS,**

***Defendant*.**

**No. 2:22-cv-02464-JPM-cgc**

---

**DEFENDANT'S ADDITIONAL EVIDENCE POST-HEARING BRIEF**

---

Defendant Memphis-Shelby County Schools ("School District"), by and through its undersigned counsel, submits this Additional Evidence Post-Hearing Brief in accordance with the Court's January 8, 2024 and February 13, 2024 Orders and states:

**I. MSCS' Speech Language Evaluations, Goals, and Services for K.B.'s October 18, 2021 IEP to May 17, 2022 Were Reasonably Calculated to Allow K.B. to Make Progress Appropriate for His Individual Circumstances.**

**A. MSCS' used appropriate SLP evaluations to determine the severity of K.B.'s language deficits and to develop goals to address the deficits for K.B.'s October 18, 2021 IEP.**

The School District's use of a Functional Communication Profile (FCP), a subjective measure, in addition to other data relevant to K.B.'s language deficit, met the requirements of the IDEA to assess and evaluate a child "in a form of communication and in the form most likely to yield accurate information on what the child knows and do academically, developmentally, and functionally, unless it is clearly not feasible to so provide or administer." 34 C.F.R.§ 300.304(c). Local Education Agencies (LEAs) have discretion to select particular testing or evaluation

instruments, provided the requirements of the IDEA are satisfied. *See* OSEP, *Ltr to Anonymous*, Sept. 17, 1993.

Additionally, Plaintiffs' Expert admitted that when a student's language abilities cannot be accurately measured using standardized testing, it is appropriate to use non-standardized testing. D.E. 98, PageID 5386:16-22. Non-standardized testing such as a Functional Communication Profile, which MSCS utilized on October 7, 2021 after the August 17, 2021attempt to administer the OWLS was unsuccessful, is an acceptable assessment for speech-language pathologists because SLPs would not require objective or standardized data to diagnose a severe language impairment. D.E.97, PageID5388:1-9. Additionally, for the purposes of obtaining reliable data to develop goals for K.B., Ms. Bauer, Plaintiffs' expert admitted that the School District's October 7, 2021 Functional Communication Profile (FCP), a subjective evaluation, yielded reliable data to determine appropriate goals for K.B. PageID5388:10-17; *see also, Nack v. Orange City Sch. Dist.*, 454 F.3d 604, 612 (6th Cir. 2006)(rejecting argument that student was harmed by IEPs lack of baseline that student was harmed by IEPs lack of a baseline to measure future progress" where the short terms objectives were capable of measurement.)

**B. K.B.'s October 18, 2021 IEP Language Goal 4 of 7 Dealing with Labeling was Appropriately Challenging to Provide K.B with a FAPE.**

The language goals contained in K.B.'s October 18, 2021 IEP were reasonably calculated to allow K.B. to make progress appropriate in light of his individual circumstances. K.B.'s language goal, Goal 4 of 7, to "label and identify common objects with increasing complexity relating to home, school, and community settings with 80% accuracy given 4/5 opportunities across 3 consecutive sessions as measured by SLP data by the end of the IEP period" did not deny K.B. a FAPE because it was similar to what he achieved during the October 7, 2021 FCP. This was a sufficiently challenging goal because, K.B. had not been able to consistently verbally label common

objects, as demonstrated by the August 7, 2021 attempt of the OWS-II, and because the Language goal called for increasing the complexity, which MSCS' SLP fulfilled by requiring K.B. to label in a field of 2-3 objects. *See C.D. by and through M.D. v. Natick Public Sch. Dist.*, 924 F.3d 621, 628-629 (explaining that *Endrew F.* did not "construe the FAPE standard as two independent tests" and for students not fully integrated into a regular classroom, the student's individual goals may differ, but every child should have the chance to meet challenging objectives."). Ms. Bauer, who did not review K.B.'s progress reporting, would not have been aware of how MSCS' SLP increased the complexity of the goal by requiring K.B. to label common objects from fields of 2-3 objects. *See e.g.,* D.E.14-14, APD TR, p. 2485 (9). As of January 17, 2023, K.B. "continue[d] to maintain consistency with this goal. He remains at approximately 50% accuracy for labeling and identifying within a field of 2-3. Once field complexity increases past 3, K.B.'s accuracy tends to decrease. *Id.*

**C. MSCS Provided K.B. with Sufficient SLP Services for His October 18, 2021 IEP and for Compensatory Services.**

K.B.'s October 18, 2021 IEP provided for K.B. to receive eight (8), 30-minute sessions of SLT services monthly. This amount included two (2) compensatory 30-mintue sessions of SLT services per week. A.H. Ex. 1, p. 16 of 20; 17-18 of 20. This amount of SLT services was appropriate to provide K.B. with a FAPE to address the severity of his language deficit because of his limited ability to attend and because it allowed for K.B. to have sufficient time in the classroom setting to enhance functional communication and provide for compensatory education services for the 2020-2021 School Year. D.E. 97, PageID5120:21-5123:23. Ms. Bauer admitted that the eight, 30-minute sessions per month are sufficient for K.B. to make progress appropriate for his circumstances. PageID5363:23-5364:7.

Plaintiffs did not present proof to meet their burden of proof to show that K.B. needed at least one more thirty-minute session of compensatory services per week to recover a lost benefit

for the 2020-2021 school year. Ms. Bauer's opinion that K.B. should receive at least one more 30-minute session of SLT services for compensatory education per week. D.E. 98, PageID 5376-5377. Ms. Bauer admitted that the data did not show that K.B. lost a benefit from not receiving SLT services during the 2020-2021 school year. PageID 5373:9-5374:17. She testified on direct examination that K.B. "seems about the same for language skills" for the time-period from May 2018 to October 18, 2019. *Id.* Ms. Bauer described this conclusion as unclear because of MSCS' use of the FCP instead of a standardized measure, but she failed to recognize that SLP data from the Indiana Revaluation, although it was an attempt at a standardized measure, was not reliable. Ex. 10, PageID2438; PageID5556:19-5557:23; PageID5109:6-5111:2.

Additionally, the Court should reject Ms. Bauer's opinion on compensatory SLT services because allowing additional testimony on compensatory SLP service at this stage, when it was not addressed during the administrative hearing, changes the nature of the hearing to a trial de novo and excuses Plaintiffs' failure to exhaust administrative remedies on the issue of compensatory SLT services. *Deal v. Hamilton Cnty. Bd. of Educ.*, 392 F.3d 851 n. 8 (citing *Metro Gov't of Nashville & Davidson Cnty., Tenn. v. Cook,* 915 F.3d 232, 234-35 (6th Cir. 1990) (quoting *Town of Burlington v. Dept. of Educ.*, 736 F.2d 773, 790-91 (1st Cir. 1984)). *Metro Bd. of Public Educ. v. Guest*, 193 F.3d 457, 463 (6th Cir. 1999) (finding that the district court committed error when it admitted evidence for the purpose of evaluating later proposed IEPs, exceeded its jurisdiction to consider parent's proposal to send student to a private facility, and erred when it admitted evidence about an unrestricted observation of the student at school because those issues were not before the ALJ); *see also*, *Ruhl v. State of Ohio Dep't of Health*, No. 16-cv-773, 2016 WL 5896828, at *5 (N.D. Ohio Oct. 7, 2016) (citing *Metro Gov't of Nashville & Davidson Cnty., Tenn. v. Cook,* 915 F.2d 232, 234-

35 (6th Cir. 1990) for the proposition that the district court should limit additional evidence relevant to the unfairness involved in one party's reserving its best evidence for trial).

**D. K.B.'s October 18, 2021 IEP did not deny K.B. FAPE Related to Assistive Technology.**

Plaintiffs did not raise the issue of assistive technology during the Administrative Hearing. Accordingly, this Court should not consider Plaintiffs' proof related to assistive technology at this stage of the litigation. *See Deal.*, 392 F.3d 851 at n. 8 (6th Cir. 2004); *Ruhl*, No. 16-cv-773, 2016 WL 5896828, at *5; and *Guest*, 193 F.3d 457, 463 (6th Cir. 1999).

Even if the Court finds that it appropriate to consider proof about the issue of assistive technology, K.B.'s October 18, 2021 IEP was reasonably calculated to provide him with appropriate assistive technology tools at the time it was developed. K.B.'s October 18, 2021 IEP Team considered K.B.'s need for AT. AH Ex. 7 at p. 18 of 20. MSCS's SLP discussed the process for determining appropriate AT. *Id.* Plaintiffs SLP expert admitted that the language goals in the October 18, 2021 IEP called for total communication through gestures, picture exchange, which are assistive technology ("AT"). D.E.98, PageID 5366:23-5367:6.; D.E. 98, PageID 5366:23-5367:10.

During the Additional Evidence Hearing, both SLP experts agreed it was appropriate for K.B. to start with low-tech AT to make sure that a student can work through the picture exchange or work through and understand pictures, and move to more high-tech options from there. D.E. 98, PageID 5371:8-16; D.E. 97, PageID 5118:9-5120:13. Ms. Bauer, explained that because K.B. "had the goal for total communication goal (sic), which stated [K.B.] would use gestures and communication which is assistive technology. And the *next step beyond that, once he completed those goals, was to do assistive technology.*" D.E. 98, PageID 5637:11-20 (emphasis added). While K.B. demonstrated the ability to label common objects during the October 7, 2021 FCP assessment, he did not demonstrate an understanding of the functional use of common objects through receptive

(or expressive) language. AH Ex. 1 p. 2. For example "when presented with two objects in picture form and asked 'which one do you eat with, write with' etc.[,] he did not respond by eye gaze or gesture or pointing to the picture." AH Ex. 1 p. 2.

In essence, Plaintiffs' expert reasoned that K.B. should have been assessed for high-tech AT sooner, but she did not have a basis for this opinion. Ms. Bauer admitted that she had not reviewed K.B.'s progress reporting for the period from October 18, 2021 through May 17, 2022, so could not have known whether or when K.B. completed his total communication goal using low-tech AT, especially since the Progress Reports showed how the SLP was increasing the complexity of the labeling goal. Accordingly, the Court should reject her opinion that K.B. did not receive a FAPE related to evaluating for higher-tech AT. Regardless, as of January 2022 and February 2022, however, K.B. progress reporting indicates that he had not achieved his total communication goals of using sign language and picture exchange. D.E.14-13, APD TR, p. 2495 (13), 2497 (21), 2506 (30)/p. 13, 21, 30 of 40. Furthermore, according to K.B.'s Progress Reports, as of March 30, 2022, K.B. began trialing more high-tech AT in the form a Big Mac with K.B. D.E.14-13, APD TR, p. 2515 (40)/p. 30 of 40. Moving from a picture exchange to a Big Mac, which is a single picture device would have been an appropriate advancement in AT for K.B. D.E.100 PageID 5133:14-23.

**E. K.B. Did Not Require an Audiological Examination for FAPE under his October 18, 2021 IEP.**

Plaintiffs did not raise an issue related to an alleged hearing loss for K.B. during the Administrative Hearing. *See* D.E.14-7 Hearing Transcripts. Therefore, considering evidence on this issue is outside the scope of appropriate additional evidence. *Deal*, 392 F.3d at 851 n. 8 (internal citations omitted); *Guest*, 193 F.3d at 463 (6th Cir. 1999). Alternatively, Ms. Bauer's testimony is insufficient to show that MSCS was required to conduct an audiological evaluation of K.B. to provide him with FAPE. She testified that there was not a reason not to conduct an audiological

evaluation. D.E. 98, PageID 5402. But, Ms. Bauer was not aware that a year later, on August 14, 2015, K.B.'s ISFP Team had subsequently determined that "[h]earing is not a concern at this time." D.E.14-9, APD TR, Ex. 5, p. 2126 (67). In contrast, School District's SLP expert who testified that when a student has passed a hearing screening, as an SLP, as K.B. had on both October 23, 2020 and October 8, 2021, referral for an audiologist was not required because this indicates that K.B. has functional hearing, within normal limits, and there were no other concerns raised as to hearing loss. Add. Hearing Exs. 7, 19 & 20; D.E. 97, PageID 5145:11-20; *see* Add. Hearing Ex. 1.

## II. MSCS PROVIDED K.B. FAPE RELATED TO BEHAVIORAL SUPPORTS AND ABA THERAPY SERVICES.

### A. K.B.'s October 18, 2021 IEP Appropriately Addressed K.B.'s Behavior Through His Prevocational Goals.[1]

The Court should reject Plaintiffs' assertion that K.B. was required to have behavioral intervention plan (BIP) in order for K.B.'s IEP to be reasonably calculated for K.B. to make progress towards his goals, whether or not there were indicators that K.B.'s behaviors interfered with his learning. The IDEA did not mandate the development of a BIP for K.B. 34 C.F.R. §300.530(f); *see also*, 71 Fed. Reg. 46,683 (2006). Even when an IEP Team determines that a student's behaviors interfere with learning, a BIP is not required. Rather, school districts may use positive behavioral supports and interventions to address behaviors that interfere with learning instead of a BIP. K.B.'s October 18, 2021 IEP accomplished this through pre-vocational goal, addressing increasing attending to task and his language goals, which addressed K.B.'s behavior relevant to attention to task and expressing his wants and needs, although goals may not have even been required. *Lathrop R-II School Dist. v. Gray,* 611 F.3d 419, 425 (8th Cir. 2010) (citing 20

[1] The School District maintains that additional evidence on whether MSCS was required to develop a BIP for K.B. to provide a FAPE under the October 18, 2021 IEP is error because Plaintiffs did not raise this issue during the Administrative Hearing. *See Deal.*, 392 F.3d 851 at n. 8 (6th Cir. 2004); *Ruhl*, No. 16-cv-773, 2016 WL 5896828, at *5; and *Guest*, 193 F.3d 457, 463 (6th Cir. 1999).

U.S.C. § 1414(d)(3)(B)(i) and reasoning that if a behavior impedes a child's learning, the IEP team need only "*consider,* when appropriate, strategies, including positive behavior interventions to address behavior[.]") (emphasis original). AEH Ex. 14, PageID 3058, 3060. K.B.'s October 18, 2021 IEP Team

As of October 18, 2021, there was mixed data from different sources, including K.B.'s general education teachers, special education teachers, school psychologist, SLPs, and K.B.'s about whether K.B. was exhibiting behavioral problems that interfered with learning, but K.B. had no disciplinary issues at school. D.E.14-12, APD TR Ex. 33, p. 2474 (115), 2475 (116), p. 2465-66 (106-07); p. 2473 (114); D.E. 14-9, PageID 2471, 2571; AEH Ex. 18; Ex. 1, p. 2.; D.E. 97, PageID5247:16-5249:24. In light of the mixed data, as to whether K.B.'s behaviors were interfering with learning, there was no requirement for K.B.'s October 18, 2021 IEP Team to conduct an FBA and create a BIP or otherwise address his behaviors other than through his October 18, 2021 IEP goals. *See Gray,* 611 F.3d at 425.

Mr. Ferris testimony about whether K.B. made progress toward his goals under the October 18, 2021 IEP is of little value in determining whether the October 18, 2021 IEP Team was required to provide K.B. with BIP for FAPE. IEP Teams make prospective judgments about whether the contents of an IEP are reasonably calculated to provide a student with a FAPE. Therefore, K.B.'s subsequent progress under the October 18, 2021 IEP is not determinative of whether K.B.'s IEP was reasonably calculated to allow K.B. to make appropriate progress.

The value of Mr. Ferris' testimony about K.B.'s progress under the October 18, 2021 IEP is further undercut because K.B.'s October 18, 2021 IEP was not set to expire until August 22, 2023. Ex. 14, PageID3054. Therefore, Mr. Ferris' review of the progress reporting though the 3rd Progress Reporting period does not take into account that MSCS had until the end of the school

year and through ESY to show additional progress towards K.B.'s goals. *See* 34 C.F.R. 300.324(b)(1)(i)-(2)(A) (requiring that a student's IEP team meet at least annually review to consider whether the IEP still reflects the individual needs of the student, and the IEP Team may decide or consider any lack of progress towards the student's annual goals). He also admitted that the progress reports that he reviewed showed that K.B. was making some progress. D.E. 99, PageID5520:12-PageID5522:113.

MSCS appropriately convened an IEP meeting following MSCS's receipt of Dr. Irby's IEE. Ex. 8; 34 C.F.R. § 502(c)(1) (LEA must *consider* an IEE in any decision made respect to the provision of FAPE to a child, but an LEA is not required to adopt the recommendations of an IEE). The IEP Team discussed Dr. Irby's observations, findings, and recommendations and offered to adopt most of her recommendations, including adding a Registered Behavioral Technician (RBT) to K.B.'s classroom to support K.B. Ex. 16. Dr. Irby's report also recommended that if the addition of the behavioral services did not address K.B.'s behavioral difficulties, then an FBA should be utilized to develop an IEP. D.E. PageID5514:13-24.

MSCS, however, was legally prohibited from implementing the recommendations discussed during the meeting that would constitute a change in placement, because of the IDEA's stay-put provision. 20 U.S.C. §1415(j) (stating "[e]xcept as provide in subsection (k)(4) [referring to orders by hearing officers], during the pendency of any proceedings conducted pursuant to this section, unless the State or local education agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child…"); 34 C.F.R. § 300.518. "Current educational placement" means the student's special education programming or a "decision likely to affect in some significant way the child's learning experience." *DeLeon v. Susquehana Cmty. Sch. Dist.*, 747 F.2d 149, 154 (3d Cir. 1984)(change in transportation services was not a significant

change in child's learning experience); *J.W. v. Clarksville/Montgomery Cnty. Sch. Sys.*, No. 3:12-cv-01083, 2015 WL 13859550 *6, (M.D. Tenn. April 6, 2015) (reasoning that educational placement refers to a substantial or material effect on the classes, individualized attention, and additional services a child will receive). In this case, adding the RBT services to K.B.'s IEP constituted a change in placement because the addition of these services would impact K.B.'s learning experience. *See id.*

Plaintiffs, however, did not sign the minutes from the February 28, 2022 IEP Meeting. Ex. 8. They also refused to meet on March 14, 2022 to review the draft March 14, 2022 IEP that the District developed resulting from the discussion during the February 28, 2022 IEP Meeting. PageID5228:5-5229:129. Also, Mr. K.B. subsequently testified during the Administrative Hearing that he was still considering the School District's proposed changes to K.B. services discussed in the February 28, 2022 meeting and had not yet agreed to the services. D.E.14-7, Mr. K.B. Testimony, p. 1195 (264). Moreover, the School District's willingness to amend K.B.'s October 18, 2021 IEP to provide services that not previously provided does not mean that K.B.'s October 18, 2021 IEP was inadequate or that the October 18, 2021 denied K.B. a FAPE. *See D.F. ex rel N.F. v. Rampo Cent. Sch. Dist.,* 430 F.3d 595, 599 (2nd Cir. 2005); *Berger v. Medina City Sch. Dist.*, 348 F.3d 513, 522 at n. 6. For these reasons, the Court should find that the October 18, 2018 IEP was reasonably calculated to provide K.B. with a FAPE.

**B. Plaintiffs Did Not Meet Their Burden to Show That the ALJ's Compensatory Award Was Inadequate.**[2]

Neither of Plaintiffs BCBA experts' testimony demonstrated that the ALJ's Compensatory Award was insufficient to place K.B. in the position that he would have been had he received

[2] The School District maintains that Plaintiffs did not raise Mr. Ferris' opinions about compensatory services during the Administrative Hearing. Mr. Ferris did not rely on K.B.'s Innovations in Learning Records (ILL), Ex. 12 to develop his opinions.

special education services during the 2020-2021 school year. Instead, Plaintiffs' experts contradicted one another. Mr. Ferris opined that K.B. needed 10 hours of BCBA services weekly, in addition to the school services from someone with expertise in behavioral analysis to develop a plan, collect data and help oversee it. D.E. 99, PageID 5503:22-14. Further, Mr. Ferris admitted that his recommendation of services was based on studies and students with Austism Spectrum Disorder (ASD), not K.B. individually. D.E. 99, PageID:5507:10-19.

Dr. Irby opined that K.B. plateaued from October 2019 to October 2021 due to not receiving special education services during the 2020-2021 school year, which continued for the 2021-2022 school year, and that he needed specialized instruction, under the supervision of a BCBA at school such as Madonna Learning Center as compensatory services. Dr. Irby, however, based her opinion that K.B. was plateauing on the assumption that K.B. would continue at the same rate of progress during the approximate 11-month period that from October 2018 to October 2019 would continue if K.B. continued receiving 35 hours of ABA therapy services. D.E.99, PageID 5451:3-5452:4. Dr. Irby compounded K.B.'s rate of improvement to reach that conclusion; however, the VB-MAPP data showed that K.B. did not experience the same rate of improvement from six-month period to six-month period, as the VB-MAPP skills became more complex. D.E. PageID 5454:7-5458:22. Dr. Irby also did not know whether VB-MAPP data was collected in such a way that would demonstrate whether K.B. had a regression from October 2018-October 2019. D.E. PageID 5475:20-5476:15. For these reasons, Dr. Irby's assumptions about K.B.'s rate of progress and stagnation are significantly flawed.

In comparison, the ABLLS-R data from May 2022, showed that K.B. made progress from October 2019 VB-MAPP data. D.E. PageID5169:1-15. Additionally, the ABLLS-R data tests more academically focused, complex skills, and K.B. would be considered an advanced learnger

on the ABLLS-R. D.E. PageID PageID5169-70. PageID5170:10-18: Although the tests are different so it is not an exact comparison, comparing the 60th percentile on the ABLLS-R with the VBMAPP scores from Innovations of Learning, where he scored 50% shows that K.B. made progress from the administration of the VB-MAPP to the ABLLS-R. K.B. showed additional progress in Reading from May/June 2022 to April 2023. During this time K.B. was receiving the compensatory services ordered by the ALJ as well as the additional services of a one-on-one RBT, provided by Ms. Wyatt or Mr. Young, K.B.'s RBT. K.B.'s reading skills increased from Q8 to Q14 on the May/June 2022 ABLLS-R to the April 2023 ABLLS-R. PageID5191:20-5192:9; Exhibit 5. K.B. was able to fill in missing words from a sentence. *Id.*

Finally, Plaintiffs must prove that their preferred placement of Madonna is appropriate for K.B. Plaintiffs have not shown that Madonna has a BCBA or RBT on staff. Plaintiffs also failed to show that Madonna, which only serves students with disabilities would offer K.B. an opportunity to learn from or benefit from non-disabled peers. Accordingly, the Cour should reject Madonna or a similar private school as an appropriate placement.

## CONCLUSION

For the reasons stated herein, the Court should find that Plaintiffs' additional evidence does not support reversal or modification of the ALJ's final order.

Dated: February 22, 2024

Respectfully Submitted,

s/Laura Ann E. Bailey
LAURA ANN E. BAILEY (TN BPR #027078)
Shelby County Board of Education
Office of General Counsel
160 S. Hollywood St., Room 218
901-416-6372 (direct phone)
901-416-6370 (main phone)
901-416-6374 (fax)
baileyla@scsk12.org
*Attorney for Memphis-Shelby County Schools*

KASHONDA L. DAY (MS BPR #103144)
Adams and Reese, LLP
1018 Highland Colony Pkwy
Suite 800
Ridgeland, MS 39157
601-292-0785 (direct phone)
601-353-3235 (main phone)
601-944-9339 (fax)
kashonda.day@arlaw.com
*Attorney for Memphis-Shelby County Schools*
*Admitted Pro Hac Vice*

**CERTIFICATE OF SERVICE**

The undersigned certifies that a copy of the forgoing was served upon counsel of record for Plaintiffs via the Court's electronic filing system on this 22nd day of February, 2024.

s/Laura Ann E. Bailey
LAURA ANN E. BAILEY