# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
### WESTERN DIVISION

| | | |
|---|---|---|
| **K.B., by and through his Parent, K.B.,** | ) | |
| | ) | |
| *Plaintiffs,* | ) | |
| | ) | **Case No. 2:22-cv-02464-JPM-cgc** |
| **v.** | ) | |
| | ) | |
| | ) | |
| **MEMPHIS-SHELBY COUNTY** | ) | |
| **SCHOOLS** | ) | |
| | ) | |
| *Defendant.* | ) | |

## JUDGMENT ON THE ADMINISTRATIVE RECORD

Before the Court are Parties' Motions for Judgment on the Administrative Record, Memorandums in Support, Responses in Opposition, and Post-Hearing Briefs. (ECF Nos. 40-41, 51-52, 101-102, see also ECF No. 55.)  Also before the Court is the transcript of the Evidentiary Hearings held on December 18-19, 2023 and January 8, 2024. (ECF Nos. 90, 97.)  For the reasons discussed below,  the Court **GRANTS IN PART AND DENIES IN PART** Plaintiffs' Motion for Judgment on the Administrative Record. The Court **GRANTS IN PART AND DENIES IN PART** Defendant's Motion for Judgment on the Administrative Record.

This case arises out of an administrative adjudication of claims by Plaintiffs[1] under the Individuals with Disabilities in Education Act ("IDEA").  (ECF No. 17-1 ¶ 1; ECF No. 24-1 ¶ 1.)

---

[1] Plaintiffs refer to themselves in pleadings in the plural (child K.B. through his parent Mr. K.B., with "plaintiffs" used to refer to the collective of both) while the standard convention is to refer to the child "plaintiff" or to the individual or individuals representing the child's interest in the singular or plural, as the case may be.  See Knable ex rel. Knable v. Bexley City Sch. Dist., 238 F.3d 755 (6th Cir. 2001) (referring to "parents" as bringing the claim); L.H. v. Hamilton Cnty. Dep't of Educ., 900 F.3d 779 (6th Cir. 2018) (referring to parents bringing the claim as "plaintiffs").  For consistency with our prior decisions of the court and parties', this judgment uses the plural "plaintiffs."

The child at issue, K.B., has autism, an intellectual disability, and ADHD.  (See generally ECF No. 1-3 at PageID 42-60.)  K.B. moved to Memphis with his family during the 2020-2021 school year and was registered with Memphis-Shelby County Schools ("MSCS").  (ECF No. 1-3 at PageID 48-50.)  K.B., through his parent, Mr. K.B., alleged before the ALJ that, among other deficiencies, MSCS failed to provide K.B. with a Free Appropriate Public Education ("FAPE") for the 2020-2021 and 2021-2022 school years.  The ALJ held that MSCS failed to provide K.B. with a FAPE for the 2020-2021 school year and a portion of the 2021-2022 school year ending on October 18, 2021, but that Plaintiffs failed to meet their burden of proof on post-October 18, 2021 issues.  (ECF No. 1-3 at PageID 46, 103-04.)  The ALJ awarded compensatory education.  (ECF No. 1-3 at PageID 46, 104-05.)  Plaintiffs now appeal the post-October 18, 2021 determination and the compensatory education award.  (ECF No. 1.)

Because the linchpin of the ALJ's analysis of the FAPE between October 18, 2021 and May 17, 2022 is a burden of proof standard discordant with Sixth Circuit and Supreme Court precedent, and the preponderance of the evidence demonstrates that Memphis Shelby County Schools failed to provide K.B. with a FAPE between October 18, 2021 and May 17, 2022, the Court **REVERSES** the finding of the ALJ on FAPE provision during that period.  Because the factual record is insufficiently developed to determine whether K.B. can be appropriately placed at MSCS or a private placement, the Court **REMANDS** for further proceedings consistent with this order and for determination of reasonable costs and attorney's fees.

## I.     BACKGROUND

A previous order of the Court summarized the undisputed facts of this case as follows:

Plaintiffs "brought the underlying case before a Tennessee Administrative Law Judge [("ALJ")] who adjudicated the case on behalf of the Tennessee Department of Education, Division of Special Education."  (ECF No. 17-1 ¶ 1; ECF No. 24-1 ¶ 1.)  "In the underlying case, the Plaintiffs alleged that Defendant failed to identify (or "find") K.B. as a student with

a disability, failed to properly evaluate him and failed to provide him with a free appropriate public education ("a FAPE") as required by the IDEA for the 2020-2021 School Year." (ECF No. 17-1 ¶ 2; ECF No. 24-1 ¶ 2.)  "Plaintiffs alleged that the same violations continued into the 2021-2022 school year."  (ECF No. 17-1 ¶ 3; ECF No. 24-1 ¶ 3.)

The ALJ issued a Final Order on May 17, 2022, "and found in favor of Plaintiff on two claims and [found] that Plaintiffs were entitled to compensatory education for those claims."  (ECF No. 17-1 ¶ 4; ECF No. 24-1 ¶ 4.)  "The ALJ found in favor of Defendant on all remaining claims," finding that Plaintiffs failed to carry their burden of proof.  (ECF No. 17-1 ¶ 5; ECF No. 24-1 ¶ 5; ECF No. 1-3 at PageID 23, 95, 96.)  "The ALJ […] conducted a three-day due process hearing" on March 22 and 23, 2022, which was then continued and concluded on April 8, 2022.  (ECF No. 17-1 ¶ 6; ECF No. 24-1 ¶ 6; see also ECF No. 17-5.).  The ALJ determined that Defendant was required to "provide 180 sessions, at 30-minues of in-house [Applied Behavioral Analysis] services to K.B.," which were to be provided "by a Registered Behavioral Technician, supervised by a [Board Certified Behavioral Analyst] […] under his current [Individualized Education Plan ("IEP")]."  (ECF No. 17-5 at PageID 3760; ECF No. 17-1 ¶ 6; ECF No. 24-1 ¶ 6[.])[]  The Administrative Record spans 3178 pages, including fifty-nine (59) exhibits over 777 pages.  (ECF No. 14.)

K.B. v. Memphis-Shelby Cty. Sch. Dist., No. 2:22-cv-02464-JPM-cgc, 2023 WL 6612520, *1

(W.D. Tenn. Oct. 10, 2023).  The two claims on which the ALJ found for Plaintiff were 1) that

Defendant did not provide K.B. with a FAPE during the 2020-2021 school year, in part due to a

failure to identify K.B. as a child with a disability (a "child find" violation), and 2) that Defendant

did not find K.B. with a FAPE in the first part of the 2021-2022 school year, through October 18,

2021.  (ECF No. 1-3 at PageID 103-05.)

Plaintiffs filed the Complaint on July 18, 2022, appealing in part the ALJ's findings.  (ECF

No. 1.)  Defendant filed an Answer on September 19, 2022.  (ECF No. 9.)  Defendant filed the

Administrative Record on December 21, 2022.  (ECF No. 14.)  On June 14, 2023, the case was

transferred to this Court.  (ECF No. 26.)  Plaintiffs moved for evidentiary hearing on August 7,

2023, and Defendants filed their opposition on August 21, 2023.  (ECF Nos. 36, 43.)  On

September 5, 2023, the Court granted in part and denied in part Defendant's Motion for Partial

Summary Judgment, finding that Plaintiffs had not yet exhausted their administrative remedies on

claims against Defendant arising from violations after May 17, 2022, the date on which the ALJ issued the final order.  (ECF No. 50 at PageID 4101-05.)

Parties filed Motions for Judgment on the Administrative Record and associated Memorandums of law on  August 11, 2023, a deadline set under this Court's Scheduling Order. (ECF Nos. 40-41; see ECF No. 19.)  Parties each filed a Response, and Defendants filed a Reply. (ECF Nos. 51, 52, 55.)  The Court granted in part and denied in part Plaintiffs' Motion to Supplement the Administrative Record and for Evidentiary Hearing on October 10, 2023.  In that Order, the Court required Parties seeking to supplement the record to "submit a detailed list of additional documents, testimony, and expert testimony they seek to present at the Evidentiary Hearing" and cautioned that Parties should "take care to ensure that their proposed supplemental evidence . . . [is] within the bounds set by Sixth Circuit precedent" for appropriate material presented at evidentiary hearing.  (ECF No. 56.)  An evidentiary hearing was held on December 18-19, 2023 and January 8, 2024, at which Defendant renewed their objections to the presentation of several portions of testimonial evidence as, *inter alia,* duplicative of material in the record, and not confined to the issues before the Court.  (ECF No. 90 at PageID 4944, 4960, 4977, see also Id. at PageID 5037 (same objection by Plaintiffs).)  Parties were ordered to file, and subsequently filed, post-hearing briefs.  (ECF Nos. 102-03.)  Defendants post-hearing brief renews the same objections and extends them to most of the evidence proffered there.  (ECF No. 103.)

II.   **LEGAL STANDARD**

In the Sixth Circuit, District Courts reviewing the administrative record of an IDEA case must "make findings of fact based on the preponderance of evidence contained in the complete record, while giving some deference to the fact findings of the administrative proceedings."  Deal v. Hamilton Cnty. Bd. Of Educ., 392 F.3d 840, 849-50 (6th Cir. 2004).  "When educational expertise

4

is relevant to an ALJ's finding, the reviewing court affords the finding more weight." Somberg v. Utica Pub. Schs., 908 F.3d 162, 172 (6th Cir. 2018) (citing McLaughlin v. Holt Pub. Schs. Bd. Of Educ., 320 F.3d 663, 669 (6th Cir. 2003)). District Courts may not "'simply adopt the state administrative findings without an independent re-examination of the evidence.'" Id. at 173 (citing Doe v. Metro. Nashville Pub. Schs., 133 F.3d 384, 387 (6th Cir. 1998)). District courts "[] shall receive the records of the administrative proceedings; [] shall hear additional evidence at the request of a party; and [] basing [their] decision[s] on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C). District courts may set aside administrative findings when "the evidence before the court is more likely than not to preclude the administrative decision from being justified based on the agency's presumed educational expertise, a fair estimate of the worth of the testimony, or both." Berger v. Medina City Sch. Dist., 348 F.3d 513, 519 (6th Cir. 2003).

IDEA requires that states that receive federal education funding provide students a free appropriate public education ("FAPE"). Endrew F. ex. rel. Joseph F. v. Douglas City. Sch. Dist. RE-1, 137 S. Ct. 988, 993 (2017). "To meet its substantive obligation under [IDEA], a school must offer an [educational program] reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." Id. "Any review of an IEP must appreciate that the question is whether the IEP is reasonable [in the prospective judgment of school officials at the time it is issued], not whether the court regards it as ideal. Id. at 999. When "parents challenge the appropriateness of a program or placement offered to their disabled child by a school district under the IDEA," courts first "ask whether the school district has complied with the procedures set forth in IDEA" and then "whether the IEP, developed through the IDEA's procedures, is reasonably calculated to enable the child to receive educational benefits." Knable ex rel. Knable

v. Bexley Sch. Dist., 238 F.3d 755, 763 (6th Cir. 2001).  In Endrew F., the Supreme Court rejected

appellants contention that the requirement that IEPs must be reasonably calculated to enable a

child to make "appropriate progress" considered "appropriate progress" to be progress "merely

more than *de minimus*," but also declined to set an alternate standard for "appropriate progress,"

writing that "it is the nature of [IDEA] and the standard we adopt to resist [] an effort [to elaborate

on what 'appropriate' progress will look like]: the adequacy of a given IEP turns on the unique

circumstances of the child for whom it was created."  Endrew F., 137 S.Ct. at 1001.

To obtain relief for a procedural violation, plaintiffs must show that the violation caused

"substantive harm."  Deal v. Hamilton Cty. Bd. Of Educ., 392 F.3d 840, 854 (6th Cir. 2004).

Substantive harm occurs when procedural violations "seriously infringe upon the parents'

opportunity to participate in the IEP process, . . . deprive an eligible student of an individualized

education program[,] or result in the loss of educational opportunity."  Knable, 238 F.3d at 765-

66.

In Schaffer ex rel. Schaffer v. Weast, the Supreme Court established that the burden of

persuasion in IDEA hearings rested on the party seeking relief.  546 U.S. 49, 56 (2005).  The Court

writes that the term "burden of proof" is a slippery one, and that "part of the confusion surrounding

the term arises from the fact that historically, the concept encompassed two distinct burdens: the

"burden of persuasion," *i.e.* which party loses if the evidence is closely balanced, and the "burden

of production," i.e., which party bears the obligation to come forward with the evidence at different

points in the proceeding."  Id.  The Court clarifies that for the purposes of their opinion, "this case

concerns only the burden of persuasion, as the parties agree . . . and when we speak of burden of

proof in this opinion, it is to this which we refer."  Id

6

III.   **ADMINISTRATIVE FINDINGS**

      a.   *Undisputed Findings*

The ALJ found that MSCS "did not provide K.B. with a FAPE during the 2020-2021 school year through October 18, 20[2]1, because MSCS violated its procedural child find obligation, as well as its obligation to provide K.B. with an appropriate [IEP]. This violation deprived K.B. of an educational benefit and significantly impeded Mr. K.B.'s opportunity to participate in the decision-making process of his son's education." (ECF No. 1-3 at PageID 46.)

      b.   *The ALJ's Factual Findings*

The ALJ noted in his findings of fact that on September 14, 2021, Mr. William Graves, Lucie E. Campbell Elementary School's school psychologist evaluated K.B. (ECF No. 1-3 at PageID 61.) The ALJ details the findings of Mr. Grave's report, noting that Mr. Graves found that K.B.'s cognitive functioning placed him at the "extreme low range" of IQ, but that "K.B. only performed [two] of the [four] subtests because K.B. did not seem to comprehend what was expected of him." (Id. at PageID 65.) The ALJ also noted that observation in the classroom led him to believe that "K.B. did not seem to comprehend the lesson or the operation of multiplication [but] demonstrated appropriate and good behavior during the lesson and followed directions to put his school materials away." (Id.) The ALJ likewise noted that, during a lunchroom observation, "a classmate helped K.B. get his lunch, . . . K.B. followed his classmates to the correct table [but] K.B. did not talk to his classmates or interact with them[.]" (Id.)

The ALJ found that on October 18, 2021, "K.B.'s placement changed from a general education classroom to a functional skills classroom for academic instruction, the general education classroom for lunch, recess, and support classes, and added speech language therapy. K.B.'s IEP was changed accordingly." (Id. at PageID 66-67.) On October 26-27, 2021, the ALJ

noted that MSCS employee Jordan Harbor recommended occupational therapy for K.B.   (Id. at PageID 68.)  As a result of K.B.'s October IEP, the ALJ noted that "K.B. currently has two (2) lunches in his schedule; one with his functional skills class and one with the general education population . . . K.B. has gained weight since October 2021 [and] [t]he total amount of time in K.B.'s current schedule for academic instruction time is 3 hours and 15 minutes."  (Id. at PageID 68.)[2]

The ALJ further noted that in December of 2021 and January 2022, Dr. Sarah Irby performed an Independent Education Evaluation ("IEE") for K.B., who recommended that K.B. "be enrolled in a classroom setting appropriate for a child with ASD, intellectual disabilities, and ADHD[,]" that K.B. receive "additional one-on-one support" and at least 1-2 hours a week of language therapy in a one-on-one setting, and that K.B. receive ABA services provided under the supervision of a licensed behavior analyst.  (ECF No. 1-3 at PageID 69-70.)  The ALJ noted in his findings of fact that "[a]t the time of Dr. Irby's evaluation, K.B.'s communication and social skills were consistent with the [records from prior to his enrollment at MSCS], but he had experienced a decline in overall adaptive skills."  (Id. at 71.)  The ALJ also summarized findings from K.B.'s progress monitoring reports, which the ALJ summarized as showing that "he is making some progress in many areas with continued difficulties in others."  (Id. at PageID 72-74.)

The ALJ summarized the February 28, 2022 IEP meeting, which he characterized as considering a recommendation from Ms. Jennifer Wyatt, a Board-Certified Behavioral Analyst ("BCBA") employed by MSCS, that MCSC conduct an ABLLS functional behavior assessment for K.B., that K.B. receive "social emotional services" (which the ALJ characterizes as

---

[2] While IEPs are judged on their face, the fact that K.B. had two lunches is significant here because it demonstrates that the schedule combination noted in the IEP (academic with functional group and lunch, recess, and support classes with general group) denied K.B. an educational benefit as carried out.

"synonymous with in-house ABA therapy services") and that "additional support with RBT certification will be added to the classroom."  (ECF No. 1-3 at PageID 74.)  At the same meeting, the ALJ notes that Ms. Shavonica Williams, K.B.'s speech language therapist, agreed with the IEE in recommending that K.B. receive speech language therapy sessions.  (Id. at PageID 75.)

The ALJ's factual findings also contain a statement of educational policy writing that "[i]t is preferable for a child to learn in a school environment, versus a clinical setting in which the child would receive 6-plus hours, per day, of intensive ABA therapy in a one-on-one setting without interaction with peers." (ECF No. 1-3 at PageID 76.)

> c.  *ALJ's Analysis on the 2021-2022 Year*

The ALJ, analyzing the continuation of MSCS's "child find" violation into the 2021-2022 year, compares the educational policies of MSCS for transfer students to their approach to K.B., writing that "[t]he failure to obtain and review all available records, including those from prior institutions of learning that had either evaluated K.B. or which had provided him special education services and supports, renders MSCS's psychoeducational evaluation deficient. . . [and] also causes the October 18, 2021 IEP to be *procedurally insufficient because when the IEP was written MSCS had still yet to properly evaluate K.B. in order to make an informed decision as to what services should be made available to him.*"  (ECF No. 1-3 at PageID 91-92 (emphasis added).) The ALJ found, however, that "[w]hile MSCS['s] conduct, or lack thereof, evidences significant procedural violations, this is not enough to entitle the petitioners to relief."  (Id. at PageID 92.) The ALJ then reasons by analogy to the case of R.F. v. Southern Lehigh School District, No. 18-1756, 2019 WL 3714484 (E.D. Penn. Aug. 7, 2019) stating that because Plaintiffs "provided no proof of what manner, or type, of progress should have been made by K.B. during the 2021-2022 school year . . . and rather simply argue that not enough progress was made. . ." the question of the

substantive insufficiency of K.B.'s IEPs remains open, and Plaintiffs therefore did not meet their burden of proof. The ALJ then writes, without citation, that to show whether the IEPs were appropriate, "the Petitioners must show what progress K.B. can make, that he did not make that progress, and that some deficiency in the IEP was the cause." (ECF No. 1-3 at PageID 93.) The ALJ also notes that "[i]n the instant case, MSCS provided little testimony about K.B.'s progress, and in a vacuum, this would seem odd, indeed. But the burden of proof does not rest on MSCS." (ECF No. 1-3 at PageID 93.)

The ALJ then continued to analyze specific claims related to the insufficiency of each IEP. The ALJ writes, in response to the Plaintiff's claims that the October 18, 2021 IEP was insufficient:

> While the October 18, 2021 IEP does not specifically reflect the time that K.B. was to spend in the general education setting, this does not prove that he was not actually spending time in the general education setting in accordance with what the IEP team agreed upon. Therefore, no substantive harm was shown by the [Plaintiffs].
>
> Next, the testimony is unclear on when Mr. K.B. received a copy of the October 18, 2021 IEP. He testified that he did not receive the document, and his signature does not appear on one copy of the draft IEP. [] However, his signature does appear on a document dated October 18, 2021, that has a box checked to signify that "[a] draft IEP was developed, and a copy was provided at least 48 hours prior to my child's IEP team meeting." The bottom of the form states the "[d]ate IEP was given to the parent(s)" was November 31, 2021. []. Thus, no violation was proven.
>
> Next, while it is peculiar that a child would go to lunch twice a day, and the IEP only mentions going to lunch with his general education peers, the [Plaintiffs] did not provide proof of substantive harm as a result. For example, there is no proof as to whether or what K.B. missed by going to two lunches as opposed to one and what impact it had on him. The Sixth Circuit requires that the proof show a failure to implement substantial or significant provisions of the IEP resulting in a lack of progress according to the student's potential. Woods v. Northport Public School, Nos. 11-1493, 11-1567, 2012 WL 2612776, at *6 (6th Cir. 2012). The lack of proof on what manner, or type, of progress should have been made by K.B. and how the second lunch prevented that progress results in the [Plaintiffs] not having met their burden of proof to show substantive harm as a result of the second lunch.
>
> (ECF No. 1-3 at PageID 94-95.)

Regarding the Plaintiff's claims on the March 14, 2022 IEP, including the claim that MSCS did not employ a Registered Behavioral Technician ("RBT") at the time of the IEP meeting or when the March 14, 2022 draft IEP was allegedly sent to the parents, the ALJ writes:

> Determining whether the March 14, 2022 draft IEP is violative of the IDEA is particularly problematic because that IEP is now less than two months old, and there is little to no data available to show whether K.B. is being deprived of an educational benefit due to allegations made by the [Plaintiffs]. This problem underscores the difficulty in deciding the outcome of a legal proceeding in situations that continue to evolve after the filing of the initiating document. . . . While MSCS did not object to the proof taken relative to the events occurring after the filing of the due process complaint (20 U.S.C. § 1415(f)(3)(B) provides that issues not raised in the notice (due process complaint) shall not be allowed unless the other party agrees), this makes it no less difficult to entertain the Petitioner's post-filing claims.
>
> In any event, based on the same reasoning applied to [Plaintiffs'] allegations regarding the October 18, 2021[] IEP, the [Plaintiffs] have not met their burden to show substantive harm to K.B. as a result of the alleged conduct. The [Plaintiffs] provided no proof of what manner, or type, of progress K.B. should have been making, and that the IEP was the cause of any failure to do so. Therefore, the Petitioners failed to show that the March 14, 2022, IEP was not reasonably calculated to enable K.B. to make progress appropriate in light of his circumstances.

(ECF No. 1-3 at PageID 96-97.)

### d. *Compensatory Education Award*

The ALJ awarded compensatory education "in the form of 180 sessions, at 30 minutes per session, of in-house ABA services at MSCS, to be performed by a Registered Behavior Technician, supervised by a Board-Certified Behavior Analyst . . . in addition to the services already being provided to K.B. under his current IEP." (ECF No. 1-3 at PageID 46.)

## IV.  **PARTIES' ARGUMENTS**

### a. *Plaintiffs' Arguments*

Plaintiffs "request that this Court reverse the parts of the ALJ's order Plaintiffs have appealed[]" specifically arguing that "Defendant has continued to fail to provide a free appropriate public education to K.B. . . . after October 2021[,]" and that "the ALJ's compensatory education

award failed to fully and appropriately address Defendant's violations and the harm and deficits suffered by K.B.. (ECF No. 40 at PageID 4017.) They further request that "the Defendant be ordered to fund private placement at public expense at a school of Plaintiffs' choosing until K.B. is no longer eligible for special education services including any and all necessary related services[.]". (Id.)

Plaintiffs argue that MSCS "has not, will not, and cannot fulfill its legal responsibilities" to K.B. (ECF No. 40-1 at PageID 4020.) Plaintiffs argue that review of the complete record shows that prior to moving to Memphis, K.B. received "all-day intensive Applied Behavior Analysis [] services[.]" (Id.) Records from Innovations in Learning, included in the Administrative Record but not used in the ALJ's substantive determination recommended K.B. receive ABA therapy for thirty-five (35) hours per week and 1:1 therapy with an RBT supervised by a BCBA. (ECF No. 14-16 at PageID 3505.) Plaintiffs argue, without citation or analysis, that the October 18, 2021 IEP "could not provide a FAPE when it . . .did not include any occupational therapy—which the IEP team later decided K.B. needed." (ECF No. 40-1 at PageID 4033.)

b. *Defendant's Arguments*

Defendant argues that the Court should defer to the findings of the ALJ that Plaintiffs "did not demonstrate by a preponderance of the evidence that the School District's IEPs were inappropriate." (ECF No. 41-1 at PageID 4050.) Defendant argues that Dr. Irby, K.B.'s IEE "did not opine about whether the goals, services, or supports on the October 18, 2021 IEP or draft March 14, 2022 IEP were reasonably calculated to allow K.B. to make progress appropriate under the circumstances," Plaintiffs "elicited no proof on this point." Defendant also argues that Dr. Irby's recommendation of appropriate services for K.B. only shows "Plaintiffs had a preference for more, different, or better services," and attacks Dr. Irby's credibility by stating that she "developed her

pre-IEE recommendations based on text message communication [with] Plaintiffs' Counsel" and "always recommends occupational therapy for every student with autism."  (ECF Nos. 41-1 at PageID 4051, 14-7.)  Defendants further argue that the compensatory education challenge should fail because, *inter alia,* Plaintiffs' expert's testimony did not explain how K.B. would benefit from private school enrollment . . . [and did not] recommend private school enrollment as compensatory education."  (ECF No. 41-1 at PageID 4055.)

V.     **ANALYSIS**

a.  *IDEA Burden of Proof in the Sixth Circuit*

The ALJ bases his opinion on the provision of FAPE from October 2021 – May 17, 2022 on the Plaintiffs having failed to carry their burden of proof.  To support his definition of "burden of proof," the ALJ cites two cases: Schaffer v. Weast, and Cordrey v. Euckert, 917 F.2d 1460 (6th Cir. 1990).  Schaffer, as discussed above, is limited to determining the burden of persuasion in close cases.  546 U.S. at 52.  Cordrey rejects the argument that the burden of proof should be transferred to the school district, but does so based on the traditional burden of proof applicable to other federal statutes imposing affirmative obligations on states, and incorporates by reference a single line in Doe ex rel. Doe v. Defendant I, 898 F.2d 1186 (6th Cir. 1990), a pre-Schaffer case which adopts a Fifth Circuit standard for burden.  Cordrey, 917 F.2d at 1466.  The Fifth Circuit standard adopted in Doe is not the high one that the ALJ uses here, but instead is closer to the burden of persuasion: the opinion states that "because the IEP is jointly developed by the school district and the parents, fairness requires that the party attacking its terms should bear the burden of showing why the educational setting established by the IEP is not appropriate." Tatro v. State of Texas, 703 F.2d 823, 830 (5th Cir.), aff'd in part and rev'd in part sub nom., Irving Indep. School Dist. V. Tatro, 468 U.S. 883, 104 S.Ct. 3371, 82 L.Ed.2d 664 (1984).  The Fifth Circuit

goes on to create a floor, not a ceiling, stating that the appellant school district's argument should be rejected where it "has not even attempted" to show the IEP is inappropriate.  Id.

The ALJ instead uses the burden of persuasion established in Schaffer and the floor established in Doe/Tatro to justify a nearly insurmountable burden of production for the Plaintiffs, citing an out-of-circuit case from the Eastern District of Pennsylvania to stand for the requirement that Plaintiffs "compare, contrast, or reconcile" services offered by the school with an IEE.  (ECF No. 1-3 at PageID 93.)  The ALJ then elaborates on his view of the burden of proof, writing that the Plaintiffs "must show what progress K.B. can make, that he did not make that progress, and that some deficiency in the IEP was the cause."  (Id.)  This requirement is neither justified by caselaw nor in accord with Sixth Circuit precedent.  To be clear, the burden of proof resting on the party challenging the IEP is incorporated into Sixth Circuit precedent. See, e.g., McLaughlin v. Holt Pub. Schs. Bd. of Educ., 320 F.3d 663, 673 (2003).  The requirement that parents demonstrate the particularized aptitude for progress and specific causation from the IEP, however, is not.  Such a high burden of proof is not only beyond the scope of an IEE expert as conceptualized by the IDEA statute, but also requires any student seeking to challenge an IEP to have made progress through some alternate form of education. This requirement is nearly insurmountable for low-resource families who do not have the benefit of private placement or tutoring to provide alternate theories or measures of student aptitude.

Because the conclusions of the ALJ on the adequacy of the FAPE after October 2021 rest on misinterpretations of law, the court must, giving due deference to the expertise of the ALJ in the rest of the opinion, consider whether under a proper burden of proof, a FAPE was provided to K.B. between October 2021 and May 17, 2022.

b. *Provision of FAPE From October 2021 – March 14, 2022*

At the time IDEA was first passed, "the majority of disabled children in America were 'either totally excluded or sitting idly in regular classrooms awaiting the time when they were old enough to "drop out[.]"  Shaffer, 546 U.S. at 52 (quoting H.R. Rep. No. 94-332, p. 2 (1975)). "IDEA was intended to reverse this history of neglect." Id.  In Board of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cnty. V. Rowley, the Supreme Court wrote that the "basic floor of opportunity" provided by IDEA "consists of access to specialized instruction and related services which are individually designed to provide educational benefit to the handicapped child."  458 U.S. 176, 200-1 (1982).

The Court does not find reason to disturb the finding of the ALJ on MSCS's procedural violations in relation to the October 2021 IEP.  The ALJ found that, because K.B.'s testing by the school district was deficient, the October 18, 2021 IEP was procedurally inefficient because MSCS could not have made an informed decision as to what services should be made available to K.B..  This analysis is based on the ALJ's interpretation of the adequacy of educational testing procedures and transfer procedures, based in part on the testimony of Ms. Rebecca Fik on MSCS's policy for transfer students.  (ECF No. 1-3 at PageID 92.)  As such, it is heavily grounded in the educational expertise of the ALJ. The Court therefore defers to this finding.

Adopting the finding of the ALJ that "MSCS' conduct . . . evidences significant procedural violations," the Court must then determine whether substantive harm arose from the failure to properly assess K.B.  It did.  The preponderance of the evidence shows that K.B. was denied an educational benefit.  The ALJ himself noted that K.B. "currently has two (2) lunches in his schedule; one with his functional skills class and one with the general education population . . . K.B. has gained weight since October 2021 [and] [t]he total amount of time in K.B.'s current

15

schedule for academic instruction time is 3 hours and 15 minutes." (Id. at PageID 68.) As a result of K.B.'s deficient IEP, K.B. was given two lunches. The ALJ reported that experts observing K.B. at lunch noted that he did not speak to or interact with his classmates. (Id. at PageID 65.) While there was some testimony that K.B. was given communication and interaction goals prior to his lunches, he was not supervised or assisted during that time. (ECF No. 90 at PageID 5201-5.)

Here, the presence of two lunches is not *prima facie* evidence of denial of a FAPE, but it clearly demonstrates an absence of an educational benefit. For a non-verbal elementary school student with only three hours and fifteen minutes of academic instruction per day, over a year of missed programming, and significant barriers to peer interactions to be left unsupervised for two lunch periods a day goes beyond "peculiar." While Plaintiffs may not have demonstrated the specific progress that K.B. could have achieved with an alternate program, it is certain that the provision of two unsupervised lunch periods here meant that K.B. was not receiving educational benefit from at least one of them. Indeed, the descriptions in the record of K.B.'s lunch period suggest that the implementation of his October 2021 IEP were on par with Congress's characterization of the pre-IDEA IEP: a disabled child "sitting idly in regular classrooms[,]" left behind without the opportunity for a FAPE. Shaffer, 546 U.S. at 52 (quoting H.R. Rep. No. 94-332, p. 2 (1975)).

Even adopting the higher bar pushed for by the ALJ, the record before the Court demonstrates that K.B. made progress only after Defendant began ABA services. (ECF No. 90 at PageID 5035-36.) K.B. also made progress before his placement at MSCS when provided ABA services. (ECF No. 36-1 at PageID 3399-3494.) The ALJ characterizes the record on K.B.'s progress as otherwise "mixed." (ECF No. 1-3 at PageID 72.) But the ALJ notes that K.B. was not

16

adequately evaluated prior to the October 18, 2021 IEP, and subsequent evaluations in the record overwhelmingly recommend either MSCS's version of ABA treatment, ABA treatment, or other one-on-one coaching sessions.  (Id. at PageID 74-5.)  While the Court defers to the educational expertise of the ALJ, the admission of materials either unavailable to the ALJ because K.B. had not yet been given ABA services by MSCS or because the ALJ admitted them for notice only show that MSCS's failure to provide necessary ABA services due to the deficiency of their psychosocial evaluation, despite the advice of internal and external experts, deprived K.B. of an educational benefit.

       c.  *Provision of a FAPE from March 14, 2022 – May 17, 2022*

There is a dispute between the parties as to whether the stay-put provision required the October 2021 IEP to govern K.B.'s placement until the end of the administrative hearing.  If the October 2021 IEP governed, K.B. was not provided a FAPE for the reasons discussed above.

If the March 2022 draft IEP governed, MSCS may have failed to abide by its terms by not providing ABA-style services through an RBT.  Because the ALJ declined to advance any significant analysis as to the March 14 – May 17, 2022 issues and rested on an incorrect interpretation of the burden of proof, and because there was never affirmative agreement[3] on the admissibility of the March 14, 2022—May 17, 2022 claims before the ALJ, which in turn created doubt under the text of the statute as to whether they are properly before this Court on review, the factual record is insufficient to determine the properly applicable IEP by which to judge the March 14—May 17, 2022 period, MSCS's compliance with that IEP, and whether K.B. received a FAPE for the period in question.  As such, Plaintiff's Motion for a Judgment Reversing the Findings of

---

[3] The ALJ notes that the Defendant "did not object," while the statute requires agreement.

the ALJ is **GRANTED IN PART AND DENIED IN PART**. The decision of the ALJ is **REVERSED** and **REMANDED** for further proceedings consistent with this opinion.

     d. *Private Placement at Public Expense*

Awards of private placement at the public expense in IDEA cases frequently result from *post hoc* determinations after parents pull their students from public school and place them, initially at their own expense, in a private school. See, e.g., Shaffer, 546 U.S. at 55; L.H. v. Hamilton Cnty. Dept. of Educ., 900 F.3d 779, 787 (2018). This places under-resourced parents, such as K.B.'s, in a difficult position. That position is made even more difficult because "the core of the [IDEA] statute . . . is the cooperative process that it establishes between parents and schools." Shaffer, 546 U.S. at 53 (citing Rowley, 458 U.S. at 205-06.) When that cooperative relationship breaks down, the "emphasis on compliance with procedures giving parents and guardians a large measure of participation at each stage of the administrative process" in IDEA becomes less of a failsafe against violations of the law's principles than Congress intended it to be. It is also unclear whether MSCS *can* meet K.B.'s needs. While there remains a dispute as to whether the IEP drafted in February-March 2022 was required (or permitted) to be implemented given IDEA's "stay-put" provision, the draft IEP specifically considers both the provision of an RBT and ABA-style services. Despite this, the district only employed a single BCBA (who was also able to serve as an RBT) for what is argued to be thousands of students requiring ABA-style services in the district. (ECF No. 97 at PageID 5154-55.)

Even retroactively, however, parents seeking private school placement must demonstrate that the school district failed to provide a FAPE and that their unilateral placement was proper. Knable, 238 F.3d at 770. The record before the Court raises questions as to whether the unilateral placement in Madonna Learning Center ("MDL"), the private school of K.B.'s choice, would be

proper, given disputes over whether they currently employ a BCBA or RBT, and Plaintiffs'
contention that provision of a FAPE for K.B. would require the employment of a dedicated RBT
supervised by a BCBA.  As such, the Court **REMANDS** this case for determination on whether
private educational placement would be an appropriate compensatory award or would itself
provide a FAPE, given MSCS's two-school-year failure to provide K.B. with a FAPE.

     e. *Compensatory Education Award*

In his analysis on the issue of compensatory education, the ALJ determines which party
bears the burden of proof on the compensatory education award[4], summarizes his own efforts—
during the hearing--to steer the testimony of proffered experts from what he characterizes as
testimony on a quantitative award to that of a qualitative award, and then states that because
Plaintiffs failed to meet their burden (incorporating by reference his prior interpretation of the
burden applicable to IDEA cases) to provide a "well-articulated plan that reflects K.B.'s current
educational abilities and needs," the tribunal has no option but to rely on the testimony of Ms. Fik.
(ECF No. 99-103.)

For the reasons discussed above, the ALJ's interpretation of the Sixth Circuit burden of
proof created too high a bar.  While the burden of persuasion rested with Plaintiffs, they met the
burden of proof by a preponderance of evidence.  Because this Order reverses the ALJ's findings
on FAPE provision between October 2021 and May 2022, however, and because the Sixth Circuit
uses a qualitative approach to calculation of compensatory education, the record is not sufficiently
developed to determine an appropriate compensatory award.  For this reason, the Court finds

---

[4] The ALJ writes that "[t]he case law in the Sixth Circuit does not reveal an answer . . . [and] [t]he case law appears
to be scant, in general, on this issue."  (ECF No. 1-3 at PageID 99.)  The ALJ then cites a single case from the
District Court for the District of Columbia for his determination on the burden of proof.  (Id.)

Plaintiffs' Motion for a Judgment reversing the ALJ's compensatory education award to be **MOOT** and **REMANDS** for proceedings consistent with this judgment.

> f.  *Busing and Cost of Mr. K.B.'s Car*

Plaintiffs, in their Motion for Judgment on the Administrative Record, reference the ALJ's finding that they are not entitled to relief for Mr. K.B.'s purchase of (and subsequent loss in a carjacking at gunpoint) a car due to MSCS placing K.B. on an incorrect bus route on two separate occasions.  The ALJ noted that while "it is disturbing that MSCS had two transportation incidents regarding K.B.'s transportation [but] . . . even assuming that these incidents constituted a procedural violation of the IDEA, there is no indication that K.B. missed school or otherwise suffered any deprivation of an educational benefit."  (ECF No. 1-3 at PageID 88 (citing 34 C.F.R. § 300.513(a)(2); Winkelman v. Parma City Sch. Dist. Bd. Of Educ., No. 1:07-cv-3860, 2009 WL 4456297, at *16 (N.D. Ohio Nov. 30, 2009).)  There is no reason to disturb the conclusion of the ALJ on this issue, especially given that Plaintiffs have presented no argument or citation in support of their request for relief.  As such, the Court **DENIES** Plaintiffs' request for an award including the cost of the car.

## VI.    CONCLUSION

For the reasons discussed above, Plaintiffs' Motion for Judgment on the Administrative Record is **GRANTED IN PART AND DENIED IN PART**.  Defendant's Motion for Judgment on the Administrative Record is **GRANTED IN PART AND DENIED IN PART**.  Plaintiffs' Motion for a Judgment reversing the findings of the ALJ on provision of a FAPE between October 18, 2021 and May 17, 2022 is **GRANTED**.  To the extent Plaintiffs move for a Judgment reversing the findings of the ALJ on issues related to Mr. K.B.'s car, Plaintiffs' Motion is **DENIED**.  Because the existing compensatory education award must be reconsidered given the FAPE determination

for October 18, 2021 through May 17, 2022, Plaintiffs' Motion for a Judgment reversing the findings of the ALJ on Compensatory Education is **MOOT**.  The case is **REMANDED** to the ALJ for further proceedings consistent with this Judgment.

   **IT IS SO ORDERED** this 12th day of March, 2024.

       /s/ Jon P. McCalla
      ——————————————
      JON PHIPPS McCALLA
      UNITED STATES DISTRICT JUDGE