**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

---

**K.B., by and through his Parent, K.B.,**
Plaintiffs.

No.: 2-22-cv-02464-JPM-cgc

**v.**

**MEMPHIS-SHELBY COUNTY SCHOOLS,**
Defendant.

---

**PLAINTIFFS' MOTION FOR ATTORNEY'S FEES AND COSTS AND INCORPORATED MEMORANDUM IN SUPPORT THEREOF**

---

Plaintiffs K.B., *et al.*, by and through counsel, submit this and submits this Motion for Attorney's Fees and Costs and Incorporated Memorandum in Support. In support of their motion, Plaintiffs state as follows:

## I. FACTUAL AND PROCEDURAL HISTORY

At the heart of this case is a young boy, K.B., with autism, intellectual disability, and attention deficit hyperactivity disorder (ADHD). K.B.'s disabilities are lifelong, multiple, severe, and obvious. His disabilities are so severe that, prior to moving to Memphis in the summer of 2020, he was attending a multi-faceted agency providing all-day intensive Applied Behavior Analysis (ABA) services in lieu of a public elementary school prior to moving to Memphis in the summer of 2020. Defendant Memphis-Shelby County Schools has not only failed K.B. at every turn – initially by completely failing to identify him as a child with a disability for an entire school year and later by failing to provide him with the special education and related services necessary to provide him a free appropriate public education (FAPE) required by the Individuals with

Disabilities Education Act, 20 U.S.C. § 1400, *et seq*., (IDEA) – but has also engaged in unnecessarily contentious and time-consuming litigation strategies.

This Court has previously summarized both the factual and procedural history in this case more than once:

> Plaintiffs "brought the underlying case before a Tennessee Administrative Law Judge [("ALJ")] who adjudicated the case on behalf of the Tennessee Department of Education, Division of Special Education." (ECF No. 17-1 ¶ 1; ECF No. 24-1 ¶ 1.) "In the underlying case, the Plaintiffs alleged that Defendant failed to identify (or "find") K.B. as a student with a disability, failed to properly evaluate him and failed to provide him with a free appropriate public education ("a FAPE") as required by the IDEA for the 2020-2021 School Year." (ECF No. 17-1 ¶ 2; ECF No. 24-1 ¶ 2.) "Plaintiffs alleged that the same violations continued into the 2021-2022 school year." (ECF No. 17-1 ¶ 3; ECF No. 24-1 ¶ 3.)
>
> The ALJ issued a Final Order on May 17, 2022, "and found in favor of Plaintiff on two claims and [found] that Plaintiffs were entitled to compensatory education for those claims." (ECF No. 17-1 ¶ 4; ECF No. 24-1 ¶ 4.) "The ALJ found in favor of Defendant on all remaining claims," finding that Plaintiffs failed to carry their burden of proof. (ECF No. 17-1 ¶ 5; ECF No. 24-1 ¶ 5; ECF No. 1-3 at PageID 23, 95, 96.) "The ALJ […] conducted a three-day due process hearing" on March 22 and 23, 2022, which was then continued and concluded on April 8, 2022. (ECF No. 17-1 ¶ 6; ECF No. 24-1 ¶ 6; see also ECF No. 17-5.). The ALJ determined that Defendant was required to "provide 180 sessions, at 30-minues of in-house [Applied Behavioral Analysis] services to K.B.," which were to be provided "by a Registered Behavioral Technician, supervised by a [Board Certified Behavioral Analyst] […] under his current [Individualized Education Plan ("IEP")]." (ECF No. 17-5 at PageID 3760; ECF No. 17-1 ¶ 6; ECF No. 24-1 ¶ 6[.])[] The Administrative Record spans 3178 pages, including fifty-nine (59) exhibits over 777 pages. (ECF No. 14.)

*K.B. v. Memphis-Shelby Cty. Sch. Dist*., No. 2:22-cv-02464-JPM-cgc, 2023 WL 6612520, *1 (W.D. Tenn. Oct. 10, 2023). This Court has further summarized:

> The two claims on which the ALJ found for Plaintiff were 1) that Defendant did not provide K.B. with a FAPE during the 2020-2021 school year, in part due to a failure to identify K.B. as a child with a disability (a "child find" violation), and 2) that Defendant did not find K.B. with a FAPE in the first part of the 2021-2022 school year, through October 18, 2021. (ECF No. 1-3 at PageID 103-05.)
>
> Plaintiffs filed the Complaint on July 18, 2022, appealing in part the ALJ's findings. (ECF No. 1.) Defendant filed an Answer on September 19, 2022. (ECF No. 9.) Defendant filed the Administrative Record on December 21, 2022. (ECF No. 14.) On

> June 14, 2023, the case was transferred to this Court. (ECF No. 26.) Plaintiffs moved for evidentiary hearing on August 7, 2023, and Defendants filed their opposition on August 21, 2023. (ECF Nos. 36, 43.) On September 5, 2023, the Court granted in part and denied in part Defendant's Motion for Partial Summary Judgment, finding that Plaintiffs had not yet exhausted their administrative remedies on claims against Defendant arising from violations after May 17, 2022, the date on which the ALJ issued the final order. (ECF No. 50 at PageID 4101-05.)
>
> Parties filed Motions for Judgment on the Administrative Record and associated Memorandums of law on August 11, 2023, a deadline set under this Court's Scheduling Order. (ECF Nos. 40-41; see ECF No. 19.) Parties each filed a Response, and Defendants filed a Reply. (ECF Nos. 51, 52, 55.) The Court granted in part and denied in part Plaintiffs' Motion to Supplement the Administrative Record and for Evidentiary Hearing on October 10, 2023. In that Order, the Court required Parties seeking to supplement the record to "submit a detailed list of additional documents, testimony, and expert testimony they seek to present at the Evidentiary Hearing" and cautioned that Parties should "take care to ensure that their proposed supplemental evidence . . . [is] within the bounds set by Sixth Circuit precedent" for appropriate material presented at evidentiary hearing. (ECF No. 56.) An evidentiary hearing was held on December 18-19, 2023 and January 8, 2024, at which Defendant renewed their objections to the presentation of several portions of testimonial evidence as, *inter alia*, duplicative of material in the record, and not confined to the issues before the Court. (ECF No. 90 at PageID 4944, 4960, 4977, *see also Id*. at PageID 5037 (same objection by Plaintiffs).) Parties were ordered to file, and subsequently filed, post-hearing briefs. (ECF Nos. 102-03.)

*K.B. v. Memphis-Shelby Cty. Sch.,* No. 2:22-cv-02464-JPM-cgc, 2024 U.S. Dist. LEXIS 43251, at *5-7 (W.D. Tenn. Mar. 12, 2024). On March 12, 2024, this Court issued an Order reversing the finding of the ALJ on FAPE provision during the period from October 18, 2021 to May 17, 2022, because the ALJ used a burden of proof standard "discordant with Sixth Circuit and Supreme Court precedent," and because the preponderance of the evidence demonstrated that Defendant failed to provide a K.B. a FAPE during that time period. *Id*. at 7. The Court then remanded the case to the ALJ for further proceedings consistent with its order and to determine the appropriate compensatory education award. *Id.* The Court then issued a Judgement on April 5, 2024. (ECF No. 105).

## II. ATTORNEYS' FEES AND EXPENSES

Janet H. Goode (hereinafter "Ms. Goode"), served as lead counsel for this case and Michael F. Braun (hereinafter "Mr. Braun") served as co-counsel. The case was both legal research and briefing heavy as well as factually heavy, ultimately involving three different expert witnesses in three separate areas of expertise, as well as requiring an understanding of special education and educational testing and data with many associated meetings and documents. K.B.'s counsel have spent 811.6 hours (Ms. Goode) and 125.7 hours (Mr. Braun). (Ex. A, Goode Dec., Ex. B, Braun Dec.) in time to assist Plaintiffs, as the Declarations of counsel attest.

Plaintiffs also seeks an award of costs of $3,757.00 for filing fees, transcripts, and other costs. Plaintiffs' counsel did not bill for and has not sought reimbursement for incidental expenses such as online research, printing, or PACER fees and has not sought compensation for paralegal time even though a paralegal assisted with the preparation for the due process hearing in this case.

In addition to the Declarations of Ms. Goode (**Ex. A**) and Mr. Braun (**Ex. B**), Plaintiffs additionally submit the declarations of Attorneys Justin Gilbert (**Ex. C**) and Craig Edgington and Brice Timmons (**Ex. D**) as to the reasonableness of the requested awards.

## III. ATTORNEYS' FEES UNDER THE IDEA

### A. As the Prevailing Party, Plaintiffs Are Entitled to Attorneys' Fees

Under Federal Rule of Civil Procedure 54(d)(2), attorneys' fees and related expenses are available by motion upon a showing of the judgment and statute that entitles the movant to the award and a statement or fair estimate of the amount of such an award. The IDEA allows an award of attorneys' fees to a "prevailing party." *See* 20 U.S.C. § 1415(i)(3)(B).

Here, the Plaintiffs are unquestionably the prevailing party. First, the Tennessee Administrative Law Judge (ALJ) found Plaintiffs to be the prevailing party on two claims and

found that Plaintiffs were entitled to compensatory education on those claims in his Final Order on May 17, 20222, following the underlying due process hearing. (ECF No. 17-1 ¶ 4; ECF No. 24-1 ¶ 4.) Those findings have never been appealed by either party and, accordingly, Plaintiffs are entitled to attorneys' fees.

Plaintiffs are also now the prevailing party on the claims that they appealed to federal district court. On March 12, 2024, the Court entered an Order granting in part and denying in part the Plaintiffs' Motion for Judgment on the Administrative Record. (ECF No. 104). Significantly, this Court found in Plaintiffs' favor the lion's share of their claims, by holding that Defendant denied K.B. a free appropriate public education from October 18, 2021 to May 16, 2022 and remanding the case to the Tennessee Administrative Law Judge to reconsider the compensatory education award. *Id*.

Under Supreme Court precedent, obtaining a "judgment on the merits" makes one a "prevailing party." *Buckhannon Bd. & Care Home v. W. Va. Dept. of Health & Human Res.*, 532 U.S. 598, 603-04 (2001). The Supreme Court has stressed the importance of awarding attorneys' fees to prevailing parties in civil rights cases in particular, in order to encourage attorneys to act as "private attorneys-general," vindicating the most basic constitutional and congressional policies against discrimination. *Newman v. Piggie Park Enters.*, 390 U.S. 400, 402 (1968); *see also City of Riverside v. Riveria*, 477 U.S. 561, 574 (1986); *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). All taxpayers indirectly benefit from the redress and elimination of unconstitutional statutes and practices. *See Newman,* 390 U.S. at 402; *see also Blanchard v. Bergeron*, 489 U.S. 87, 96 (1989) ("Congress has elected to encourage meritorious civil rights claims because of the benefits of such litigation for the named plaintiff and for society at large. . . ."); *Rivera*, 477 U.S. at 574 (fees in civil rights cases need not be proportionate to a monetary recovery).

This Court should consider Plaintiffs' overall success of litigation when balancing the nature of civil rights litigation and the award of damages to Plaintiff in this matter. *See e.g. Vanderhoef v. Dixon*, No. 3:16-CV-508-TAV-DCP, 2020 U.S. Dist. LEXIS 144559, at *24 (E.D. Tenn. May 4, 2020). Additionally, "the Sixth Circuit has found that a district court improperly reduced the numbers of hours spent on "unsuccessful claims against dismissed defendants" when the claims were based upon a common core of facts." *Id.* at *29 (citing *Wayne v. Vill. Of Sebring*, 36 F.3d 519, 533 (6th Cir. 1994). The attorneys' fees amount also need not **"**be proportional to the amount of the underlying damages." *Id.* at *22 (citing to *City of Riverside v. Rivera*, 477 U.S. 561 (1986) (upholding an award of attorney fees pursuant to 42 U.S.C. § 1988 for $245,456.25 where the underlying damages award was $33,350)). Indeed, to reduce attorney fee awards in such actions would encourage government actors to deter suits through high-cost litigation rather than putting funds towards the resolution of individual cases and, more importantly, the provision of desperately needed special education and related services for children with disabilities pursuant to their IDEA mandates. Here, all of the claims brought by Plaintiffs were related to the same common core of facts, and as such, Plaintiffs aver that little reduction, if any, in the number of hours spent on this litigation is appropriate.

The Court is famously *not* called upon to become a "green-eyeshade accountant" looking for particular entries:

> [w]e emphasize, as we have before, that the determination of fees "should not result in a second major litigation." *Hensley*, 461 U.S., at 437. The fee applicant (whether a plaintiff or a defendant) must, of course, submit appropriate documentation to meet "the burden of establishing entitlement to an award." *Ibid.* But trial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time.

*Fox v. Vice*, 563 U.S. 826, 837 (2011). Even so, Plaintiffs' counsel have kept detailed time sheets reflecting the tasks and expenses incurred in pursuing this action.

**B. Principles for Calculating Attorneys' Fees**

In calculating the initial estimate of reasonable attorneys' fees, the court should use the "lodestar method," multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *Blum v. Stenson*, 465 U.S. 886, 888 (1984). This number may then be adjusted in consideration of other factors, such as the difficulty of the case, the type and amount of the attorneys' usual fee, awards in similar cases, and the experience, reputation, and ability of counsel. *Blanchard*, 489 U.S. at 94 (citing the factors laid out in *Johnson v. Georgia Hwy. Exp.*, 488 F.2d 714, 717 (5th Cir. 1974)).

The primary concern in an attorney fee case is that the fee awarded be reasonable. *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999) (citing *Blum*, 465 U.S. at 893). The award should be "adequately compensatory to attract competent counsel," but also "avoid[] producing a windfall for lawyers." *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 349 (6th Cir. 2000). After the lodestar, "[t]he trial judge may then, within limits, adjust the 'lodestar' to reflect relevant considerations peculiar to the subject litigation." *Id.* (citing *Reed*, 179 F.3d at 471–72). In performing its post-lodestar analysis, the court may consider the twelve factors listed in *Johnson. See Adcock-Ladd*, 227 F.3d at 349 (citing *Hensley*, 461 U.S. at 434 n.9).

In summary, the calculation of attorney's fees is a two-step process. *Jordan v. City of Cleveland*, 464 F.3d 584, 602 (6th Cir. 2006). The starting point for determining the amount of a reasonable attorney fee is the "lodestar" amount, which is calculated by multiplying the number of hours reasonably spent on the case by an appropriate hourly rate in the relevant community for such work. *Id*. There is "generally a 'strong presumption' favor[ing] the prevailing lawyer's

entitlement to his lodestar fee." *Adcock v. Ladd*, 227 F.3d. at 349. "Thus, modifications to the lodestar are proper only in certain 'rare and 'exceptional' cases, supported by both 'specific evidence' on the record and detailed findings by the district court." *L.H. v. Hamilton Cty. Sch.*, 365 F. Supp. 3d 713, 719 (E.D. Tenn. 2019) (quoting *Del. Valley Citizens' Council*, 47 U.S. 546, 565 (1986). The court may then, within reason, "adjust the lodestar to reflect relevant considerations peculiar to the subject litigation." *Adcock-Ladd*, 227 F.3d at 349.

The twelve *Johnson* factors are: (1) the time and labor involved; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717–19.

**1. STEP ONE: LODESTAR**

A reasonable hourly rate for an attorney is calculated according to the prevailing market rates in the community "for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum*, 465 U.S. at 895–96. To aid the Court in determining this number, Plaintiffs have submitted declarations of Plaintiffs' counsel (Exs. A-B), along with special education attorney, Justin Gilbert (Ex. C), and civil rights attorneys Craig Edgington and Brice Timmons (Ex. D).

As for time, counsel should be paid "for all time reasonably expended on a matter." *Blanchard*, 489 U.S. at 91. Hours that can be properly billed to a client can be properly billed to

an adversary party. *Binta B. v. Gordon*, 710 F.3d 608, 627–28 (6th Cir. 2013). An attorney "is not required to record in great detail how each minute of his time was expended but should at least identify the general subject matter of his time expenditures." *Hensley*, 461 U.S. at 437 n.12. Rather, fee applicants are expected to exercise "billing judgment" and the same ethical billing practices they would use if they were submitting a bill to a client. *NE Ohio Coal. For the Homeless v. Husted*, 831 F.3d 686, 702 (6th Cir. 2016). As mentioned, a "green-eyeshade accountant[]" is not required, but in the Sixth Circuit, the Court "must simply do 'rough justice.'" *Id*. at 703.

"Hours spent in reviewing records, talking to other lawyers or experts, preparing legal documents and the like cannot be fully verified and therefore require the court to trust the lawyer's word that the hours claimed represent necessary work actually performed." *Id*. at 706. Detailed billing records and declarations are sufficient to overcome "conclusory allegations that the award [is] excessive." *Id*. at 705.

**2. STEP 2: CONSIDERATION OF *JOHNSON* FACTORS**

Consideration of the *Johnson* factors is optional but endorsed by the Supreme Court in *Blanchard* and the Sixth Circuit. *See Jordan v. City of Cleveland*, 464 F.3d 584, 604 (6th Cir. 2006). These factors assess the reasonableness of an award as well as whether enhancement is appropriate. *Id*.

**a. Time and Labor.**

The time and labor, by any measure, was substantial. The required effort to seek the free appropriate public education to which K.B. is entitled and for which Defendant receives federal tax dollars to provide has been extraordinary, particularly in light of the fact that Defendant simply provided no special education and/or related services to K.B. for an entire school year. This is a case that could and should have settled. The hours of work are attested to through an extensive

administrative record with over 3,100 pages and more than 100 docket entries at the District Court level. At the time Ms. Goode was presented with the case she could not foresee that this matter would take nearly four (4) years to resolve (and the case is still ongoing as it has been remanded to the ALJ, and Defendant has filed a notice of appeal to the Sixth Circuit; thus Plaintiffs anticipate that they will file a supplemental motion for attorneys' fees once the case has concluded with finality).

Defendant took the depositions of the parent, his girlfriend, and the psychologist who conducted the Independent Educational Evaluation, as well as written discovery exchanged on both sides. Defendant produced almost 2,500 pages of documents as a result of Plaintiffs' discovery requests. Defendant only produced more than half of those documents (i.e. more than 1,250 pages) fewer than two weeks before the full "trial" (due process hearing) on the merits. At the three-day due process trial, school witnesses, lay witnesses, and expert witnesses testified regarding both child find and the (lack of) provision of a free appropriate public education for a young boy with autism and intellectual disability. In federal court, the case also required retention and preparation of experts prior to a supplementary evidentiary hearing.

**b. Novelty and Difficulty.**

Novelty and difficulty rank highly too.

First, K.B.'s counsel is unaware of any published cases whatsoever that address the potential to place a child who has been denied a free appropriate public education at a private school at public expense that is not a reimbursement case. Private placement cases have always previously been brought by parents who had the financial means to place their children in private school and then to see reimbursement from the school district through litigation. In this case, however, K.B.'s family could not financially afford to do so. This Court's March 12, 2024 Order

represents the first of its kind in discussing that private placement should be available as a remedy regardless of a family's socioeconomic status.

Second, cases involving compensatory education for children who have not been provided ***any*** special education or related services for a lengthy period of time are difficult because it is extremely difficult to measure the qualitative impact of such a deprivation.

Third, these cases must be pressed through the beliefs and actions opinions of the *adversary—a school system.* That is highly challenging in itself.

Fourth, the legal terrain is complicated. See *Declaration of Professor Dean Rivkin* in support of plaintiffs' motion for attorneys' fees in a case in the Eastern District of Tennessee ("I know for a fact that there are very few attorneys in Tennessee who litigate IDEA cases on behalf of students with disabilities. These cases are often extraordinarily complex, both legally and factually, protracted, and emotionally taxing."). *Knox County, Tennessee v. M.Q. et al,* 3:20cv173 (E.D. Tenn. 2020) (ECF. No. 31, Exhibit C) (attached to this Motion as Exhibit E).

Fifth, most parents seeking a public school education for their child do not possess the necessary resources to survive a vigorous defense by the school system. And most attorneys are unwilling to accept the hope or promise of the fee-shifting statute without some advanced fees. Ms. Goode and Mr. Braun relied exclusively on prevailing and access to fees through the fee-shifting statute. Neither of them have ever accepted any form of payment from Plaintiffs.

**c. Skill Needed.**

Defendant is staffed with in-house counsel, including knowledgeable counsel who work primarily, if not exclusively, on education matters. To successfully handle this matter requires substantial skill in a niche practice area of the law: understanding educational and psychological terms, understanding placement options, understanding how those interact with "child find" and

"free appropriate public education" requirements, and how to chart and assess the reasonableness of the child's educational progress. There is not any aspect in the lawyers' toolkit which this case did not invoke: managing client expectations, issue selection, building the case, taking discovery, working with experts, motion practice, brief writing, extreme organizational skills, trial preparation and planning, cross-examination, federal court practice, and quasi-appellate advocacy.

**d. Preclusion of Employment.**

Ms. Goode, as a 22-year attorney, and Mr. Braun, as a 29-year attorney, are each solo practitioners. Therefore, *every* time they worked this case took away from work on other cases. There is no shortage of work in the educational realm, with the attorneys each receiving dozens of requests for special education representation every week. This reflects an incredible demand for help within Tennessee's public citizenry and, no doubt, the lack of supply of attorneys capable of meeting it.

**e. Customary Fee.**

The fee rate of $450 fall well within the rates for complex litigation and civil rights litigation in the Western District. (Ex. A, Goode Dec.; Ex. B, Braun Dec.; Ex. C., Gilbert Dec.; Ex. D, Edgington/Timmons Dec.). As mentioned above, this case involved novel issues and presented numerous challenges. Therefore, arguably there is no forum market to determine a customary fee. Plaintiff therefore requests rates consistent with the highest hourly rate awarded to attorneys with their level of expertise in federal civil rights litigation generally in the Western District of Tennessee. Their requested rates are predicated on their most recent fee award and are adjusted for additional years of practice and inflation.

**f. Fixed Fee or Contingent.**

This representation was fully contingent on employing the fee-shifting statute for recovery of attorneys' fees. (Ex. A, Goode Dec.; Ex. B, Braun Dec.) Taking this type of case through a trial and appeal without *any* guaranteed payment (and no "upside" contingency payment) would be incredibly difficult, and cost-prohibitive, to most small law firms. They took this risk, meaning that if the case was unsuccessful, there would be no charge of any fees.

**g. Time Limitations.**

IDEA cases, by their nature, are supposed to move swiftly through an administrative due process. Administrative law judges must render a decision within 45 days. 34 C.F.R. §§ 300.515(a) & (c). For states that have a second-tier administrative review (Tennessee does not), the review isathirty-dayperiod.34C.F.R.§300.511(b).[1] This is because a child's education is at stake, and the child is constantly evolving.

Despite these ambitious time frames, this case took considerably longer. The representation of K.B. began in September 2021 and, with this filing, will continue well beyond the two-year mark (April 2024). Unfortunately, as this Memorandum is being written, Defendant has filed a Notice of Appeal to the Sixth Circuit (even though there has been no Final Judgment).

**h. Results and Amount of Time Involved.**

This case is an unquestioned success. Defendant denied K.B. a free appropriate public education for at least two school years. The result of this case will be an attempt to remedy that to the extent possible. It also makes clear that all children, regardless of their family's socioeconomic

---

[1] In the legislative history of the IDEA, Senator Williams emphasized the importance of promptness: "It is expected that all hearings and reviews conducted pursuant to these provisions will be commenced and disposed of as quickly as practicable...." 121 Cong. Rec. 37, 416 (1975).

status, can and should be placed privately at public expense – as the IDEA provides – when their school district cannot provide them a free appropriate public education.

To achieve these results against a school system armed with teachers and specialists stating otherwise, of course, required counsel to expend a substantial amount of time. As mentioned, the case has already consumed more than two years, and K.B.'s counsel have spent 811.6 hours (Ms. Goode) and 125.7 hours (Mr. Braun). (Ex. A, Goode Dec., Ex. B, Braun Dec.)

**i. Experience, Reputation, and Ability of the Attorneys.**

In the context of a fee application, it is incumbent upon counsel to address their own experience, reputation, etc. The undersigneds' declarations addresses their experience, reputation, and ability in special education and civil rights cases. To accept such cases is not primarily a monetarily motivated decision; because the lawyers put in most of the time unpaid, and the reward is, at best, being reimbursed for time and risk already outlaid. Over time, unless one prevails in every case, this is a losing economic and business strategy. In order to pursue these types of litigation on behalf of individuals whom few others will and can competently represent, Ms. Goode and Mr. Braun each set aside hourly-rate litigation practice and opportunities.

**j. Undesirability of Case.**

Few other lawyers would desire this case. One cannot be monetarily motivated at all; the child's lawyers are putting in all of the time unpaid, and the reward is, at best, being paid the hours already expended. Put differently, it is critically important to be paid fully for the victories because the losses are not paid at all.

**k. Nature of the Professional Relationship with the Client.**

The attorney client representation in this case has held tight for more than two years, with K.B.'s father sharing milestones of development from K.B. with counsel (including phone calls, messages, photographs, well wishes, etc.). Ms. Goode has also attended every single Individualized Education Program (IEP) meeting since becoming counsel of record, representing an enormous investment in time, energy, preparation, and emotion in efforts to try to obtain a free appropriate public education for K.B. Counsel have worked diligently, without any conflict at all with their clients' goals, and their clients remain very appreciative and pleased with their hard work and successful results.

**l. Awards in "Similar" Cases.**

Very few special education cases are brought in the Western District of Tennessee in part because there are so few lawyers in the state who litigate them. Two of the primary special education lawyers in Tennessee are Justin Gilbert (who has provided a declaration in this case) and Jessica Salonus. Mr. Gilbert and Ms. Salonus often work together on special education cases despite having their own practices. In a sister district, *L.H. v. Hamilton County,* Mr. Gilbert was approved at $400 per hour, and Ms. Salonus (then an associate approved for time incurred from 2013-2016), at $275 per hour, in January 2019. *L.H. v. Hamilton Cnty. Dep't. of Educ*., 356 F. Supp. 3d 713, 720-22 (E.D. Tenn. 2019). Additionally, in *S.P. et. al. v. Knox County, et. al.*, No. 3:17-CV-100-PLR-DCP (Knoxville), Mr. Gilbert and Ms. Salonus were approved at the attorney-fee rates of $400 and $275, respectively. Since that time, Mr. Gilbert has been awarded significantly higher fees (see below).

In the Western District of Tennessee, other civil rights cases provide guidance. In *Turnage v. Oldham*, 2021 U.S. Dist. LEXIS 239877, *33, 2021 WL 5855637 1467651 (W.D. Tenn. Dec. 9,

2021) (Mays, J.) awarded Brice Timmons $420 per hour and Craig Edgington $275 per hour (both of whom have provided declarations in this case)[2][3] in a court-approved class action settlement based on a Lodestar calculation with no multiplier. *Turnage* was a desirable case with substantial, calculable damages and a clear-cut path to liability. Numerous firms filed similar lawsuits which were ultimately consolidated with Frank Watson, Bill Burns, Michael G. McLaren, and Mr. Timmons acting as co-lead-counsel. In that same case, Mr. McLaren and Mr. Watson were awarded $500/hour and Mr. Burns $495/hour.

In *G.S. et al, v. Governor Gill Bill Lee*, 2:21-cv-02552-SHL-atc (W.D. Tenn. 2022), a case of similar risk and novelty arose during the COVID pandemic, when the Governor issued Executive Order 84 ("EO 84") which allowed parents to opt out of any order or requirement for a student in kindergarten through twelfth-grade to wear a face covering at school, on a school bus, or at school functions, and its progeny in violation of plaintiffs' rights to access school under the ADA and Section 504 of the Rehabilitation Act, Judge Sheryl H. Lipman awarded attorneys from

---

[2] This award was based off work performed prior to December 2021.

[3] Arguably, no private practice, currently-active lawyer in Shelby County has had a greater impact for civil rights, from tackling a misguided efforts by the Governor of Tennessee to prohibit mask mandates within Tennessee schools to prevent the spread of COVID-19, to challenging systematic child labor abuses in the "therapeutic boarding school" and "troubled teen" industry, to assisting students with access to educational facilities, to obtaining more than one "first-of-its-kind" preliminary injunction in the education civil rights context both under Title IX and the ADA. Mr. Timmons has represented prevailing plaintiffs in First Amendment litigation in multiple states, and his work, and that of his team, have had beneficial impacts across the United States. Mr. Timmons also litigates extensively on behalf of incarcerated individuals with disabilities and individuals with disabilities against caregiver institutions such as mental health facilities and group homes. No other lawyer in Tennessee has this constellation of skills, rendering Mr. Timmons a "lawyer of last resort" for many plaintiffs.

Donati Law similar rates. (ECF No. 140). There, Mr. Timmons was awarded $400 per hour and Mr. Edgington was awarded $260 per hour.[4]

In *Autumn Sanders v. Shelby County Schools*, 2:19-cv-2056-JTF-cgc (W.D. Tenn. 2019), a case of similar risk and novelty arose when a disabled student was injured following the denial of her ADA accommodations. Following a jury trial which resulted in an award for the plaintiff, Judge John T. Fowlkes awarded attorneys from Donati Law similar rates. (ECF No. 280). There, Mr. Timmons was awarded $400 per hour and Mr. Edgington was awarded $250 per hour.[5] In *S.B. a minor student, by and through his parents, M.B. and L.H., et al. v. Governor Bill Lee*, 3:21-cv-317-JRG-dcp (E.D. Tenn. 2019), the masking challenge to EO 84 out of Knoxville, Tennessee, the district judge awarded $500 per hour to Justin Gilbert for similar work.

Plaintiffs' counsel aver that annual attorney fee rate increases around five (5) percent are in line with market increases. *See Williamson v. Recovery Ltd. P'ship*, No. 2:06-cv-292, 2013 U.S. Dist. LEXIS 88962, at *28 (S.D. Ohio June 25, 2013). Most recently, in June 2023, Mr. Timmons obtained a preliminary injunction preventing the enforcement of Tennessee's "adult cabaret entertainment" law ("AEA") in *Friends of George's, Inc. v. Steven J. Mulroy*, 2:23-cv-02163-TLP-tmp (W.D. Tenn. 2023), in which Judge Thomas Parker declared that the AEA was unconstitutional. In that matter, they submitted a request for an award of $450 per hour. As such, Plaintiff's counsel aver that an award of $450 per hour is appropriate based on fee awards in prior years.

---

[4] This award was based off work performed prior to September 2022.

[5] This award was based off work performed prior to September 2019.

## IV. PLAINTIFFS' COSTS & EXPENSES

### A. Costs & Expenses under the IDEA

A district court may also award reasonable costs to the prevailing party. 20 U.S.C. § 1415(i)(3)(B)(i)(I). The term "costs" includes costs incurred in connection with work yielding fees covered by a fee award, as well as the specific types of costs set out in 28 U.S.C. § 1920, the general provision governing the taxation of costs in federal court. *See e.g., Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 297-98, (2006); *G.B. ex rel. N.B. v. Tuxedo Union Free Sch. Dist.*, 894 F. Supp. 2d 415, 443 (S.D.N.Y. 2012); S. *W. ex rel. N.W. v. Board of Educ. Of City of New York*, 257 F. Supp. 2d 600, 607 (S.D.N.Y 2003) (holding costs of photocopying, faxing, word processing, travel, and meals reasonable).

The costs and expenses are reflected in the Declarations of Ms. Goode (Ex. A) and Mr. Braun (Ex. B), as well as their attached time and billing reports. These expenses were necessary for success in Plaintiffs' case. Those costs are $3,757.

Counsel did not bill for online research expenses, regular printing, copying, PACER fees, and other small, incidental expenses for which they are entitled to bill. Because both Ms. Goode and Mr. Braun are solo practitioners without staff, neither counsel billed for any paralegal or administrative assistant time. Plaintiffs ask that the lack of billing for incidental costs and paralegal expenses be considered when determining Plaintiffs' hourly rate.

The sheer volume of email correspondence is also not fully captured in counsels' billing. Although the volume included is high, it was almost impossible to capture all emails given how many emails and other forms of communication (telephone calls and video conferences) that have occurred over the course of this case. Courts in the Sixth Circuit have acknowledged that lawyers have adopted minimum billing for receiving or sending emails, letters or conducting telephone

calls and that a standard .1 is acceptable and larger billing is appropriate for substantially lengthier e-mails. *See Doe v. Wilson Cty. Sch. Sys.*, No. 3:06-0924, 2008 U.S. Dist. LEXIS 83249, at *21 (M.D. Tenn. Sep. 22, 2008). Furthermore, each of Plaintiffs' attorneys had a duty of care to Plaintiffs. All attorneys of record in a case have a duty of care to stay abreast of facts and information and that includes reviewing every e-mail and pleading in this case.

## V. CONCLUSION

For the reasons stated herein and in the contemporaneously filed declarations, Plaintiffs request an award of attorneys' fees and costs in the total sum of $368,327.00 for Ms. Goode and $57,215.00 for Mr. Braun.

/s/ *Janet H. Goode*
Janet H. Goode, TN BPR #35872
917 S. Cooper Street
Memphis, Tennessee 38104
(901) 308-7511
(901) 641-3972 (fax)
janet@janetgoodelaw.com

/s/ *Michael F. Braun*
MICHAEL F. BRAUN (BPR 032669)
5016 Centennial Boulevard, Ste. 200
Nashville, TN 37209
(615) 378-8942

**Attorneys for Plaintiffs**

**CERTIFICATE OF SERVICE**

I certify that on April 19, 2024, I filed a copy of the foregoing Plaintiffs' Memorandum in Support of Plaintiffs' Motion for Attorneys' Fees and Costs attached documents by means of the Official Court Electronic Document Filing System (CM/ECF) for the Western District of Tennessee, which simultaneously sent a copy to counsel for the Defendant, Shelby County Schools, Office of General Counsel, 160 S. Hollywood, Room 218, Memphis, Tennessee 38112, Laura Bailey, Associate General Counsel, at baileyla@scsk12.org, and KaShonda L. Day, Adams and Reese, LLP, 1018 Highland Colony Parkway, Ridgeland, MS 39157, kashonda.day@arlaw.com.

Signed: *<u>/s/Janet H. Goode</u>*
Janet H. Goode