IN THE UNITED STATES DISTRICT COURT
OF WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

**K.B., by and through his Parent,**
**K.B.,**
    *Plaintiffs*,

v.                                                                              No. 2:22-cv-02464-JPM-cgc

**MEMPHIS-SHELBY COUNTY**
**SCHOOLS,**
    *Defendant*.

---

### RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS

---

Defendant, Memphis-Shelby County Schools ("School District"), files this Response opposing Plaintiffs' Rule 54(d) Motion for Attorneys' Fees and Costs in the amount of $619,540.50, incurred from September 1, 2021 to April 10, 2025. Plaintiffs are not the prevailing parties because no final judgment has been issued in this case, and as a result, there is no court ordered change in the relationship between the Parties. Even if the Court determines that Plaintiffs are the prevailing parties, the Court should reduce Plaintiffs' Attorney Fees because 20 USC §1415(i)(3)(F)(i-iv) requires reduction and because the hours on the case were not reasonably expended. Alternatively, the Court should find that Plaintiffs' Motion for Attorneys' Fees and Costs is time barred. In further support of its response the School District states as follows:

1

I.      **Plaintiffs Are Not the Prevailing Party Because There Is No Final Judgment.**

Obtaining an award for attorneys' fees and costs for a parent under the IDEA requires a showing that the parent is the prevailing party in a case. Under the IDEA, a parent must obtain a court ordered change in the legal relationship between [the plaintiff] and defendant. A parent "may be considered a 'prevailing part[y]' for purposes of attorney's fees if they succeeded on any significant issue in litigation which achieved some benefit the parties sought in brining suit." *Berger v. Medina City Sch. Dist.*, 348 F.3d 513, 525 (6th Cir. 2003) (quoting *Hensley v. Eckerhart*, 461 U.S. 42, 433 (1983)); § 1415(i)(3)(B)(i)(I).

The touchstone of the prevailing party inquiry is the material alteration of the legal relationship of the parties. *Berger*, 348 F.3d at 526 (6th Cir. 2003) (determining that parents were not the prevailing parties where parents obtained a finding that the defendant failed to provide their child with a FAPE but failed to obtain reimbursement for private school placement) *but see Krichinsky v. Knox Cty. Schs.*, 963 F.2d 847, 850 (6th Cir. 1992) (concluding that the parents were "prevailing" parties even though they did not succeed in obtaining a residential placement for their child "because they convinced the court to order defendant to provide their child increased speech and occupational therapy). "Success alone . . . is not enough to be entitled to attorneys' fees as a prevailing party. [T]here [must] be a *court-ordered* change in the legal relationship between the plaintiff and the defendant. Indeed, the change in legal relationship requires a 'judicial imprimatur' before prevailing party status can be granted." *Y.B. v. Williamson Cty. Bd. Of Educ.*, 2009 WL 4061311, at *5 (M.D. Tenn. Nov. 20, 2009) (emphasis in original); *Taylor v. Dist. of Columbia*, 187 F. Supp.3d 46, 54 (D.D.C. 2016) ("The term prevailing party is a legal term of art that requires more than achieving the desired outcome; the party seeking fees must also have been awarded some relief by the court.") (internal quotation marks and citation omitted).

As the Court of Appeals determined, no final judgment, however, has been issued by this Court. D.E. 123, PageID 6016-6019. Accordingly, neither party has achieved the judicial imprimatur required to obtain prevailing party status. The conclusion of the administrative proceedings on remand is not the final judgment of this Court. *Id.*, *C.W. by and through B.W. v. Denver Cnty. Sch. Dist. No. 1,* 994 F.3d 1215, 1222, 1223 (explaining that "the district court may enter final judgment only after the administrative remand concludes and it has adjudicated any appeal by C.W. and/or the District of the ALJ's decision on remand. Once the district court enters a proper final judgment, all interlocutory orders, including summary judgment on the non-idea claims, will merge into it"). Whether Plaintiffs are the prevailing parties turns on the entry of final judgment in this case, including any judicial review sought by either of the Parties of the order on remand. *Id;* D.E. 128-1 Plaintiffs Complaint Seeking Judicial Review of January 6, 2025 Order. In the absence of a final order, which has not been entered, there is no judicial imprimatur making Plaintiffs the prevailing parties.

Reviewing the current record, under this Court's most recent order addressing the claims and defenses on the merits, both Parties would qualify as the prevailing parties. The Court issued a Judgment on the Administrative Record on the Parties' cross-motions, Granting in Part and Denying Part Plaintiffs' Motion for Judgment on the Administrative Record and Granting in Part and Denying in Part Defendant's Motion for Judgment on the Administrative Record and Judgment both parties should be considered prevailing parties. D.E. 104, 106. The same is true if the Court considers the ALJ's orders on remand, Plaintiffs are not the prevailing party on at least following issues: (1) Plaintiffs have not achieved success on their claims that the School District denied the Student a free appropriate public education (FAPE) as it relates to special transportation and Plaintiffs have not been awarded a vehicle Ex.1- Jan. 6, 2025 Final Order on Remand; (2)

3

Plaintiffs have not achieved success on their claims that the School District denied the Student a FAPE as it relates to occupational therapy (OT) or physical therapy (PT) *Id.*; (3) Plaintiffs have not achieved success on their claims that there were continuing violations of the IDEA after the issuance of the final order on the original due process hearing, D.E. 50; (4) Plaintiffs did not achieve success on their claim that the draft March 2022 IEP was properly before the ALJ during the administrative due process hearing, Ex. 1; (5) Plaintiffs did not achieve success on their claim that the monetized compensatory education award should be paid directly to Mr. K.B., Ex. 2 Feb. 10, 2025 Final Order on Remand after PFR. Accordingly, Plaintiffs are not the sole prevailing parties.

## II. **Even if Plaintiffs Are the Prevailing Party, Plaintiffs' Attorney Fee Claim Should Be Reduced.**

20 U.S.C. § 1415(i)(3)(F)(i) & (iii) require the Court to reduce the attorney fee award because Plaintiffs unnecessarily protracted the proceedings, increasing the amount of time involved in this case and the time spent, and the legal services furnished were excessive considering the nature of the action or proceeding. *Id; Somberg on behalf of Somberg v. Utica Cmty. Schs.*, 908 F.3d 162, 180-182 (6th Cir. 2018) (holding that district courts may only award reasonable fees and 1415(i)(3)(G) does not "mandate that the district court abandon its discretion to ensure that fees are reasonable.") (citing *Williams by & through Williams v. Fulton Cnty. Sch. Dist.*, 717 F.App'x 913, 917 (11th Cir. 2017); *Pheland v. Bell*, 8 F.3d 369, 373 (6th Cir. 1993); *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). The Act gives district courts discretion to award attorney fees. 20 U.S.C. § 1415(i)(3)(B) (enumerating circumstances where a court may award reasonable attorney fees). If, however, a district court finds that any of the factors present in 20 U.S.C. §1415(i)(3)(F) are present, the district court "shall reduce, accordingly, the amount of attorneys fees awarded under this section." 20 U.S.C. §1415(i)(3)(F) (requiring (i) reduction if the parent or parent's

4

attorney during the course of the action or proceeding unreasonably protracted the final resolution of the controversy; (ii) the hourly rate exceeds the prevailing hourly rate in the community; (iii) the time spent and legal services furnished were excessive based on the nature of the proceeding; or (iv) the parent's attorney did not provide appropriate notice under 20 U.S.C. § (b)(7)(A)). Even if a court determines that subparagraph (F) does not apply because a court determines that "the local education agency unreasonably protracted the final resolution of the action or proceeding," the court retains discretion to reduce unreasonable fees including excluding from its calculation hours that were not reasonably expended. 20 U.S.C. § 1415(i)(3)(G); *Somberg*, 908 F.3d at 181-182 (citing *Williams by & through Williams v. Fulton Cnty. Sch. Dist.*, 717 F.App'x 913, 917 (11th Cir. 2017); *Pheland v. Bell*, 8 F.3d 369, 373 (6th Cir. 1993); *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).

**A. Plaintiffs unreasonably protracted the litigation.**

To date, Plaintiffs obtained interlocutory liability findings on the issues of whether K.B. was identified and received a FAPE from October 2020-October 2021 at the administrative hearing and before this Court on the time period from October 2021 until it May 17, 2022 final order in the original due process hearing, it ultimately took them three, three-day evidentiary hearings (totaling nine days) and post-remand hearing proof in the form of affidavits to achieve this result. On remand, the ALJ awarded Plaintiffs a monetized award of ABA compensatory services valued at $283,331.25 with invoices for these services to be submitted to the School District as the guarantor for payment. Ex. 7, Jan. 27, 2025 Order on Remand; Ex. 2, Feb. 10, 2025 Final Order on Remand after PFR. Although this Court found that the ALJ applied the wrong standard to the proof to determine whether K.B. received a FAPE from October 2021 through May 17, 2022, Plaintiffs unreasonably protracted the litigation by failing to identify and support with proof the

5

compensatory education award they sought in the original due process hearing. Had Plaintiffs diligently prosecuted their case or requested bifurcation on liability and damages during the administrative stage, they could have avoided six days of hearings, three days at the additional evidence hearing before this Court and three days at the remand hearing, as well as the time billed for preparing affidavits after the remand hearing. Plaintiffs' diligence at the original due process hearing would have allowed this Court to review the record and determine whether the ALJ applied the correct standard. From there, the Court may have still ordered a remand, but the ALJ would have been tasked with applying this Court's order on the standard to the existing record, without the need for additional proof before this Court or on remand.

Plaintiffs knew when they filed the due process case on October 6, 2021 that they desired compensatory education in the form of ABA services and speech language services. They sought a quantitative award of "compensatory education in the form of a year's worth (1170 hours: Tennessee requires 180 days of instruction with 6.5 hours of instruction each day of ABA (Applied Behavior Analysis) therapy services, a year's worth of speech/language therapy services, and a year's worth of occupational therapy services, all at providers of Petitioner's choice." D.E. 14-1, PageID 413; *Bd. of Educ. of Fayette Cty. v. L.M.*, 478 F.3d 307, 316 (6th Cir. 2007) (citing *Reid ex rel. Reid v. D.C.*, 401 F.3d 516, 524 (D.C. Cir. 2005)) (rejecting an hour-for-hour, quantitative approach for compensatory education awards in favor of qualitative approach designed to put the student in the place that he would have been but for the denial of a FAPE). Plaintiffs' Counsel had already consulted with Dr. Irby before filing the due process complaint and appear to have relied on Dr. Irby's pre-suit recommendations to develop their prayer for relief. D.E. 14-10, PageID 2671, (text messages between Plaintiffs' Counsel and Dr. Irby). Before filing suit, Dr. Irby, who had only reviewed the School District's evaluation of K.B., asked whether Plaintiffs' Counsel

could "force the school to pay for ABA at a clinic?" and concluded that K.B. "need[ed] more than just a one-on-one RBT at school." Despite asking for this remedy in their Due Process Complaint, having conceived of it via text message with Plaintiffs' Counsel, Plaintiffs failed to elicit proof from Dr. Irby about her opinion on a compensatory education award at the due process hearing. *See* D.E. 14-7, PageID 1389-1457; PageID 1721-1793.

Plaintiffs pivoted away from seeking outside ABA services at the start of the original due process hearing. Instead, they informed the Court and School District (for the first time) that they would be seeking an award of compensatory education in the form of prospective placement at private school, funded by the School District, during their opening statement. D.E. 14-7, PageID 1342-1343. Even though they clearly planned to seek a compensatory education award in the form of prospective, private placement, at least by the start of the original due process hearing, they solicited next to no testimony on private placement from Dr. Irby or any other witness about whether a private placement could provide K.B. with a FAPE.[1]

Instead, Dr. Irby merely testified that in the Shelby County area there were "different schools that focus on specifically teaching children with autism and intellectual disabilities where they have classrooms set up where their integrating occupational therapy and ABA and they're just integrating it throughout the day." D.E. 14-7, PageID 1451:12-21. She claimed that these schools existed in the Shelby County area, and she mentioned Holy Rosary's preschool program, for which K.B. was too old, Madonna Learning Center (MLC), and another private school the name of which she could not remember. *Id.* at PageID 1451:22-1452-7. This was the extent of the proof that Plaitniffs developed that during the original due process hearing showing that MLC could provide

---

[1] The School District objected that Plaintiffs had not provided any prior notice about seeking private placement as a remedy in advance of the hearing. D.E. 14-7, PageID 1347-1351. The IDEA requires that a parent seeking public funding for unilateral private placement give notice of their intent before withdrawing a student. D.E. 34 CFR 300.148(d).

7

K.B. with a FAPE, which they identified in their opening statement as the compensatory education remedy they were seeking.

Dr. Irby's testimony at the original due process hearing did not address how long K.B. should be in a private school. Plaintiffs did not provide any detail about the appropriate amount of time that K.B. would need this placement. D.E. 14-7, PageID 1451:12-21; 1451:22-1452-7. Dr. Irby also did not specify whether MLC had a BCBA and/or an RBT on staff that could oversee K.B.'s ABA services. She also did not address whether MLC would adopt or follow K.B.'s IEP, whether it offered opportunities for instruction or socialization with non-disabled students, what type of diplomas it offered, whether K.B. would be admitted there, or any other details about MLC's programing. Notably, Plaintiffs' Counsel did not ask Dr. Irby questions about these aspects of MLC. As this Court later recognized in its remand order, even after taking additional testimony about a prospective, private placement at MLC, Plaintiffs had still not proven that MLC could provide K.B. with a FAPE. D.E. 104, PageID 5613-5614.

Plaintiffs' failure to elicit adequate proof on their compensatory education award of private placement (or even a compensatory education award aligned to the relief they sought in their due process complaint), is inexplicable in light of the ALJ's efforts throughout the original due process hearing to have Plaintiffs' Counsel identify for the ALJ what the compensatory education award they were seeking. The ALJ directed "on more than one occasion during the hearing to the [Plaintiffs] that they must provide evidence of what a compensatory education should be based on, in accordance with the *Reid* qualitative approach, [but] the [Plaintiffs] failed to do so." D.E. 14-16, PageID 3550. On the first day of the hearing, before Dr. Irby concluded her testimony, and before she returned to complete her testimony on the second day of the hearing, ALJ raised the issue of compensatory education. *Id.* On the second day of the hearing, Petitioners admitted the

8

that compensatory education awards are qualitative, not quantitative, and they indicated that they would rely on K.B.'s IEP's and Dr. Irby's recommendations to support their contention that the compensatory education award should be a private placement, although they pointed to guidance indicating that compensatory education services arising from services missed as a result of COVID-19 should be provided on an hour-for-hour basis. *Id.* On the third day of the hearing, which took place almost two weeks after the second day of the hearing, Plaintiffs had not presented proof of why their proposed private placement could provide K.B. a FAPE and was an appropriate compensatory award. D.E. 14-16, PageID 3551.

Concerned that Plaintiffs had not presented adequate testimony in support of their compensatory education award, the ALJ implored Plaintiffs to at least identify the compensatory education award that they were seeking. Plaintiffs' Counsel asserted that they had submitted a "very detailed prayer for relief" as "fairly good suggestion of what [Plaintiffs] think would be fair compensatory education." D.E. 14-7, PageID 2295-2296. Plaintiffs' prayer, however, was based on a quantitative award of compensatory education, and did not include a request for prospective private placement. D.E. 14-1, PageID 413. The ALJ identified that he expected proof supporting that "[t]his is what a child, with this disability, for this long period of time, who allegedly was deprived of FAPE for this period of time and entitled to compensatory education and here is why," which Plaintiffs did not present. D.E. 14-7, PageID 2299:13-25. Plaintiffs' Counsel admitted that Plaintiffs were not going to present evidence of this nature because they did not want to "pin [themselves] down to one remedy" on the third day of the due process hearing. D.E. 14-7, PageID 2294:11-13 (stating on the third day of the hearing, "I'm not going to - - I don't know that we really want to pin ourselves down to one remedy right now as I'm speaking."). The ALJ recognized, however, that Plaintiffs' refusal to identify the remedy that they were actually seeking

9

created a problem for both the School District in terms of presenting an alternative compensatory education award, but also for the ALJ in determining whether there was adequate proof in the record to support Plaintiffs' preferred compensatory award, whatever it was. *Id.*, PageID 2294:19-2295:4.

Plaintiffs' unwillingness to identify the qualitative compensatory education it was seeking, as required under *Somberg,* 908 F.3d at 176 (citing *L.M.*, 478 F.3d at 316 (citing *Reid ex rel. Reid v. D.C.*, 401 F.3d 516, 524 (D.C. Cir. 2005))), and to present evidence supporting their preferred compensatory education award was unreasonable and prolonged the litigation of this case. It reverberated throughout the subsequent litigation and is echoed in Plaintiffs' more than half-million demand for attorneys' fees. Plaintiffs were tasked with demonstrating that their proposed private placement would provide K.B. FAPE. D.E. 104, PageID 5615-5616 (citing *Knable ex rel. Knable v. Bexley Sch. Dist.*, 238 F.3d 755, 770 (6th Cir. 2001)). Identifying a compensatory education award and explaining why it was appropriate for the circumstances is fundamental element of a special education case, especially one concerning private placement. *Id.*

Plaintiffs waited more than a year after filing their judicial review case and a week before the Parties' motions for judgment on the administrative record were due to file their motion for the Court to Supplement the Administrative Record and for Evidentiary Hearing. D.E. 36. The Plaintiffs provided little detail about what additional evidence they would present in this motion. D.E. 56, PageID 4338. To address this lack of specificity and further determine what additional evidence should be admitted to supplement the administrative record, the Court allowed Plaintiffs to submit detailed disclosures of the evidence they sought to supplement the record, an opportunity for the School District to identify competing proof, and granted Plaintiffs' request for evidentiary hearing. D.E. 56, PageID 4336- 4337; D.E. 57-59; D.E. 64, 70. The Parties complied, and Plaintiffs

were granted the opportunity to present expert proof from witnesses. D.E. 65, 71.

During the additional evidence hearing, Plaintiffs presented proof from a speech-language pathologist expert, Ms. Courtney Bauer, and their BCBA expert, Mr. Geoffry Ferris. Plaintiffs did not identify Ms. Bauer or any other person as a speech language pathology expert as a part of their due process hearing witness list, although they included speech language pathology services in their prayer for relief in the original due process complaint. D.E. 14-5, PageID 1047-1052; D.E. 14-1, PageID 413. Plaintiffs previously disclosed Mr. Ferris as a potential expert during the discovery phase of the original due process hearing, but they did not list Mr. Ferris on their due process hearing witness list or attempt to call him during the hearing. *Id.* Plaintiffs did not present evidence on amount of compensatory speech language pathology services or ABA services at the due process hearing. D.E. 14-7, PageID 2299:13-25; D.E. 14-16, PageID 3551. Plaintiffs claimed to present Ms. Bauer's and Mr. Ferris's testimony to assist the Court with interpreting the material in the administrative record, including whether the ALJ's compensatory education award was appropriate. D.E. 56, PageID 4336. Under this premise, Ms. Bauer and Mr. Ferris testified about their opinions on an appropriate compensatory award for K.B. D.E. 89, PageID 4876-4921 (Bauer Testimony); D.E. 90, PageID 4998-5049 (Ferris Testimony).

During the three-day additional evidence hearing, Dr. Irby testified K.B. should be placed in at MLC because MLC has a BCBA on staff, although she admitted she was not aware of whether MLC had an RBT on staff and integrated into the classroom environment. D.E. 90, PageID 4953:21-4956:5. On cross examination, Dr. Irby admitted that she had not checked to see if Ms. Kate McDonald, the person she testified was a BCBA at MLC held a BCBA license anywhere. D.E. 90, PageID 4987:18-4988:9. Even after Dr. Irby's testimony during the additional evidence hearing, this Court found that it was unclear whether MLC currently employed a BCBA or RBT,

11

the services that Plaintiffs asserted K.B. required to receive a FAPE. D.E. 104, PageID 5615-5616.

As it turns out, Plaintiffs could not prove that MLC would provide K.B. with a FAPE because MLC does not have a BCBA or RBT on staff. MLC did not employ a BCBA or RBT and if a student requires one-on-one assistance throughout the day with ABA type therapy, MLC does provide this service. Ex. 3, Remand Hearing Transcript Vol. III at p. 264:18-265:6; p. 381:5-19; p. 387:24-388:12.

During the remand hearing on December 3, 2024, Dr. Irby also opined that K.B.'s progress and his skill acquisition at MSCS, since her testimony during the additional evidence hearing almost exactly a year previously, no longer supported placement at MLC because K.B. had advanced beyond the programing at MLC. Ex. 4, Remand Hearing Transcript Vol I at p. 113:3-115:13; p. 342:11-347:6. Based on their position that K.B. was no longer a candidate for MLC because of his progress, Plaintiffs also called Mr. Ferris to testify for a second time at the remand hearing. Despite K.B.'s progress, Mr. Ferris kept his opinion nearly the same, except to provide more detail than he provided at the additional evidence hearing: "definitely recommend[ing] two years of like 30 hours a week of ABA that he missed and then subsequent to that [a 50% reduction year to year over a three-year period]. *Compare* Ex. 3, Remand Hearing Transcript Vol. III at p. 273:22-p. 274:17 *with* D.E. 90, PageID 5023-5025. This is information that Mr. Ferris easily could have shared during the additional evidence before this Court, or if Plaintiffs had called him as a witness during the original due process hearing, given that they identified Mr. Ferris in their due process discovery.

During the Remand Hearing rebuttal testimony, Plaintiffs also requested and were granted a third day of testimony for rebuttal proof. Plaintiffs called Dr. Larsson, a clinical psychologist and whose testimony simply reenforced Dr. Irby's opinions and testimony, as Dr. Irby had cited Dr.

12

Larsson in her remand hearing report. Ex. 5- Ex. 11 to- Identification Only to Remand Hearing, Larsson Report *with* Remand Hearing Ex. 1, Irby Expert Report. Dr. Larsson also admitted that his opinions were about general principles. Ex. 6, Remand Hearing Transcript Vol. IV at p. 722:2-725:10. The proof in support of relief that Plaintiffs have presented to date was available could have been presented in the original due process hearing, yet Plaintiffs failed to present this proof.

Moreover, in terms of the remedies that Plaintiffs sought to achieve, Plaintiffs were not successful in achieving the prospective private placement that appears to have been the primary driver of Plaintiffs need to supplement the administrative record before this Court and the need to take an additional three days of proof before the ALJ on remand. Instead, after the proof confirmed that MLC did not offer the ABA services, Plaintiff insisted that K.B. could not make progress without Plaintiffs pivoted back to what essentially amounts to quantitative award of ABA services. Even after the remand hearing concluded with a ninth day of proof for the case in total, Plaintiffs had not provided sufficient evidence for the ALJ to render a determination in their now third proposed compensatory education award that amount for funding the monetized ABA services totaling over 3,105 hours of services for which Mr. K.B. could select from whom, how, what, and when those services would be provided. Ex. 1- Jan. 6, 2025 Final Order on Remand p. 22, 24.

Plaintiffs inability to come forward with proof that was readily available to them, when they had access to Dr. Irby as an expert as early as September 2021, does not justify the significant attorney fee award sought in this case. Plaintiffs called Dr. Irby as a witness during the original due process hearing, and she could have easily relied on the same general principals that she relied on during the additional evidence hearing and remand hearing: that ABA services are the "gold standard" for all students with autism, a student cannot ever fully recover from missed services because their brains become less plastic overtime, as a basis for the compensatory award, with or

13

without more time to review the Innovations in Learning Records. Plaintiffs' Counsel simply failed to ask the pertinent questions even though they were prompted to ask them by the ALJ during the original due process hearing.

The protracted nature of this litigation is also not attributable to the ALJ's application of the wrong standard on during the original due process hearing. The application of a too high a standard did not prevent Plaintiffs from presenting appropriate proof in the first place. Had Plaintiffs developed an appropriate record during the original due process hearing to begin with, even if this Court ordered a remand, Plaintiffs would not have needed to submit additional proof before this Court or before the ALJ on remand.

Whether the Court considers Plaintiffs' nine days of proof, plus supplemental affidavits rehashing much of the same ground and issues that could have been raised, testified to, and addressed at the original due process hearing as unreasonably protracting the case or as unreasonably expended, the Court should reduce the Plaintiffs' attorneys' fees by reducing Plaintiffs' total hours of 1,382.70 (1,120 hours for Ms. Goode and 262.70 hours for Mr. Bruan) by no less 40% to reflect that Plaintiffs unreasonably protracted or incurred unreasonable billing hours when they failed to present proof or even identify their proposed compensatory education award in the original due process case. *See Somberg*, 908 F.3d at 181-182 (affirming reduction of Plaintiffs' attorneys' fees by 25% for protracted litigation).

**B. Plaintiffs' Counsel's Billed Work Is Not Compensable Under Lodestar Principles or Under the IDEA.**

The Court need not act as a green eyeshade accountant to see that reduction of Plaintiffs' $619,540.50 attorneys' fee petition is necessary.

    **1. There are inaccuracies in the amount charged for time billed throughout the records.**

14

The Time and Billing Records submitted as D.E. 131-4 for Attorney Goode contains numerous inaccurate entries. D.E. 131-4, PageID 6236-6278. There are entries throughout the Time and Billing Records that show that an incorrect charge for the amount of time billed. For example, on January 28, 2025, 1.2 hours, billed at $450.00 per hour, resulted in a charge of $1,440.00. On December 7, 2021, a .1 time entry, billed at $450.00 per hour, resulted in a charge of $675.00. On September 15, 2023, a .1 time entry, billed at $450.00 per hour, resulted in a $4,230.00 charge. The errors are present throughout the Time and Billing Records and are not limited to one particular page or any single type of entry. D.E. 131-4, PageID 6236-6278. Regardless of the reason for the errors, as a mistake or otherwise, they call into question the accuracy of the records overall, and the Court should not award attorney fees based on these records.

**2. Attorney Fees Are Not Recoverable for Time Spent in IEP Meetings or Resolution Sessions.**

Attorney fees are not recoverable for IEP meetings or resolution session meetings. Time spent at IEP meetings are not recoverable under the IDEA. 20 U.S.C. § 1415(i)(3)(D)(ii) states that "Attorneys' fees may not be awarded related to any meeting of the IEP Team unless such meeting is convened as a result of an administrative proceeding or judicial action, or at the discretion of the State, for a mediation described in subsection (e)." There has been no order from this Court or the ALJ for the Parties to convene an IEP meeting. The same is true of resolution sessions. 20 U.S.C. §1415(i)(3)(D)(iii) (citing (f)(1)(B)(i) [resolution session] as a meeting that should not be considered to be convened as the result of an administrative hearing or judicial action or an administrative hearing or judicial action itself); *Y.B. v. Williamson Cnty. Bd. of Educ.*, No. 3:08-0999, 2009 WL 4061311 at *7-9 (M.D. Tenn. Nov. 20, 2009) (analyzing subsections excluding IEP meetings and resolution sessions from attorney's fees and declining to award attorney's fees sought for resolution session). Accordingly, the Court should not award fees for billing entries

15

related to attending, scheduling or preparing for IEP meetings or the October 2021 Resolution Session.

### III. Alternatively, Plaintiffs' Motion for Attorneys' Fees and Costs Is Time Barred.

Arguing in the alternative, the Court should deny Plaintiffs' Motion for Attorneys' Fees and Costs as time barred because it was not filed within 14 days of any of the ALJ's Orders on Remand. Despite taking position that the Court's Judgment on Administrative Record and Judgment on grounds that they were non-final before the Court of Appeals, Plaintiffs appear to have taken the position that the ALJ's conclusion of the remand proceedings constituted a final order in this judicial review case. *See e.g.*, D.E. 128, 128-1 at PageID 6052 (characterizing the ALJ's January 6, 2025 final order as "resolving the issues this Court remanded."). In light of the Court of Appeals determination this Court's remand order was non-final, the School District disagrees that the ALJ concluding the proceedings on remand constituted the final order of this Court. The ALJ's orders did not conclude the judicial review, and this Court retains jurisdiction over those orders which require review and adoption, modification, or rejection to become final.

Nonetheless, to the extent that this Court finds that any of the ALJ's three orders issued after the remand hearing constitute the final order of this Court, then this Court should reject Plaintiffs' Motion for Attorneys' Fees and Cost as time barred. Plaintiffs bring their motion under Rule 54(d)(2). A motion for attorneys' fees and costs must be filed within 14 days of a court's final judgment. Fed. R. Civ. P. 54(d)(2)(B) (also requiring that the movant specify the judgment); *see also, King v. Floyd Cnty. Bd. of Educ.*, 228 F.3d 622, 627 (6th Cir. 2000) (reasoning that parents who seek a judicial review of an administrative decision and attorneys' fees either as a part of the judicial review or for judicial review have 14 days to file a motion for fees from the entry of the

16

judgment). No matter which of the ALJ's order Plaintiffs rely on as the final order of this Court, their motion is time barred.

The ALJ issued three orders after the remanding hearing on January 6, 2025, January 27, 2025, and February 10, 2025. The January 6, 2025 order was styled as a Final Order. Ex. 1. It included findings of fact and conclusions of law but required the Parties to submit affidavits about the costs associated with ABA services Plaintiffs sought. The ALJ then issued an order dated January 27, 2025 that incorporated additional proof from the affidavits. Ex. 7. On February 10, 2025, the ALJ issued a third order, styled as Final Order after PFR [Petition for Reconsideration], granting in part the School District's January 21, 2025 motion for reconsideration in part and denying it in part. Ex. 2. Treating any of these orders as the final order of this Court and calculating 14 days makes Plaintiffs' April 11, 2025 motion for attorneys' fees untimely.

Plaintiff cannot obtain relief from their untimely motion on grounds that they requested leave from this Court to file a motion for attorneys' fees after the Court dismissed their first motion for attorneys' fees as unripe. Plaintiff's March 6, 2025 motion for leave did not include their current Motion for Attorneys Fees and Costs, and Plaintiffs did not file their current motion for attorneys' fees until April 11, 2025, well beyond the 14-day time limit for Rule 54 motions for attorneys' fees. D.E. 131; *Horne v. City of Hamilton*, 181 F.3d 101 (6th Cir. 1999)(unpublished) (determining there was no reason to excuse party's failure to file a motion for attorneys' fees and explaining that the 1993 amendment to Rule 54 noted that the purpose of the 14 day deadline to ensure that the opposing party knew of the claim before the deadline to appeal lapsed); *Allen v Murph*, 194 F.3d 722, 724 (1999) (affirming district court's decision to deny motion to extend time for accepting attorney fee petition filed after 14 day deadline).

17

## **CONCLUSION**

For the foregoing reasons, Plaintiffs' Motion should be denied. Plaintiffs are not yet the prevailing parties. If the Court determines, however, that they are, the Court should reduce Plaintiffs' Attorneys' Fees and Costs by no less than 40% in light of the unreasonably protracted nature of the litigation and/or because the hours worked were unreasonably incurred. Additionally, the time and billing records are inaccurate on their face and payment for fees that prohibited by the IDEA. Alternatively, the Court should find that Plaintiffs' Motion is time barred.

Dated: May 2, 2025                                    Respectfully Submitted,

s/ Laura Ann E. Bailey
LAURA ANN E. BAILEY (TN BPR #027078)
Shelby County Board of Education
Office of General Counsel
160 S. Hollywood St., Room 218
901.416.6372 (direct phone)
901.416.6370 (main phone)
901.416.6374 (fax)
baileyla@scsk12.org
*Attorney for Memphis-Shelby County Schools*

KASHONDA L. DAY (MS BPR #103144)
Adams and Reese, LLP
1018 Highland Colony Pkwy.
Suite 800
Ridgeland, MS 39157
601.292.0785 (direct phone)
601.353.3234 (main phone)
601.944.9339
kashonda.day@arlaw.com
*Attorney for Memphis-Shelby County Schools*
*Admitted Pro Hac Vice*

**CERTIFICATE OF SERVICE**

The undersigned certifies that a copy of the forgoing was served upon Counsel of Record for Plaintiffs via the Court's electronic filing system on this the 2nd day of May 2025.

s/ Laura Ann E. Bailey
Laura Ann E. Bailey